[No. S013832. Dec. 19, 1991.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JOHN MARKS, Real Party in Interest.

**COUNSEL**

Ira Reiner, District Attorney, Harry B. Sondheim, Donald J. Kaplan and Brent Riggs, Deputy District Attorneys, for Petitioners.

Kent S. Scheidegger as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

John Marks, in pro. per., Lawrence A. Morse and Robert S. Gerstein for Real Party in Interest.

Farella, Braun & Martel, Douglas R. Young, Douglas Sortino and Ann G. Daniels as Amici Curiae on behalf of Real Party in Interest.

**OPINION**

**ARABIAN, J.—**

## I. INTRODUCTION

We confront in this case the interplay of two otherwise unrelated constitutional concerns: the prohibition against being twice put in jeopardy and the right of a criminal defendant to be mentally as well as physically present at

trial. In deciding whether real party in interest John Marks[1] may invoke the protections of the double jeopardy clause, we first consider whether a trial court suffers a fundamental loss of jurisdiction when it subjects a defendant to trial without first determining that he has the requisite capacity to understand, consult, and assist in the defense of his life or liberty. (Pen. Code, § 1368.) We resolve this threshold question in the negative and conclude the court retains jurisdiction over the subsequent, albeit defective, proceedings.

This determination does not end our inquiry, however. Because the failure to evaluate a defendant's competence to stand trial mandates reversal, principles of double jeopardy may limit the scope of reprosecution. To assess the proper application of this constitutional guaranty in the present factual context, we also address whether a conviction of a lesser degree crime by operation of law (Pen. Code, § 1157)[2] should be accorded the same effect on retrial as an express finding of the lesser degree crime by the previous trier of fact. This question we answer in the affirmative.

## II. Factual and Procedural Background

We are not unacquainted with the underlying factual and procedural history herein, portions of which we reviewed on automatic appeal.[3] (*People v. Marks* (1988) 45 Cal.3d 1335, 1338-1339 [248 Cal.Rptr. 874, 756 P.2d 260] (*Marks I*).) The record established reversible error because the trial court failed to hold a competency hearing in compliance with section 1368, subdivision (b), after expressing a doubt as to defendant's ability to proceed with the guilt phase. (45 Cal.3d at pp. 1340-1344; see *People v. Hale* (1988) 44 Cal.3d 531, 541 [244 Cal.Rptr. 114, 749 P.2d 769].) "[T]o provide brief guidance to the trial court for the possibility of a retrial," we noted that "[t]he jury's verdict did not specify the degree of murder of which defendant was convicted [contrary to the mandate of section 1157]." (45 Cal.3d at p. 1344.)

The matter returned to the trial court, where defendant was found competent. The prosecution reinstated all charges, including first degree murder, both special circumstance allegations, and all enhancement allegations, and

---

[1]Real party in interest Marks is the defendant in the underlying criminal proceeding. For clarity, we refer to him throughout the opinion as defendant.

[2]All further statutory references are to the Penal Code.

[3]A jury found defendant guilty of murder (§ 187) and conspiracy to commit murder (§§ 182/187). It found true a financial-gain special-circumstance allegation (§ 190.2, subd. (a)(1)), but not true allegations of a lying-in-wait special circumstance (§ 190.2, subd. (a)(15)) and personal use of a firearm (§§ 12022.5, 1203.06, subd. (a)(1)). The jury imposed a verdict of death.

indicated its intention again to seek the death penalty. Defendant entered pleas of former acquittal and once in jeopardy (§ 1016), essentially contending that by operation of section 1157 the prosecution could not retry him on any offense greater than second degree murder.[4] The People responded that the trial court's section 1368 error rendered it without jurisdiction except to hold a competency hearing and that all other proceedings were a nullity. Since jeopardy never attached, the proffered pleas were unavailable.

After a hearing on the matter, the trial court agreed with defendant and limited the prosecution to retrial for second degree murder.[5] The People petitioned for extraordinary relief; in a divided opinion, the Court of Appeal issued a peremptory writ of mandate directing the trial court to set aside its order precluding prosecution for first degree murder and to strike defendant's pleas of former acquittal and once in jeopardy.

In reversing the trial court, the Court of Appeal majority accepted the People's jurisdictional argument, obviating the need to consider defendant's double jeopardy claims. In a lengthy explication, the dissent vigorously disagreed, positing that the trial court did not proceed without jurisdiction but only in excess of jurisdiction because its failure to hold a competency hearing denied defendant his due process right to a fair trial. Since the trial proceedings were thus not void, double jeopardy might preclude retrial for first degree murder. The dissent declined, however, to reach this issue in light of countervailing policy considerations, concluding instead that due process required the same result to avoid penalizing defendant for exercising his right to appeal.

We granted defendant's petition for review and stayed further proceedings.

### III. Discussion

#### A. *Trial Court Jurisdiction*

The parties have framed the nature and scope of our threshold inquiry thusly: The People contend double jeopardy is not implicated because the trial court's failure to observe the mandate of section 1368 divested it of fundamental, i.e., subject matter, jurisdiction. "Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier 'having jurisdiction to try the

---

[4]As in the original information, defendant was charged with conspiracy to commit first degree murder, and he responded with similar pleas to this count as well. For convenience, reference to the conspiracy count is omitted from the discussion since, for analytical purposes, it is subsumed within the murder charge.

[5]The court struck the special circumstance allegations as "surplusage."

question of guilt or innocence of the accused.' [Citations.]" (*Serfass* v. *United States* (1975) 420 U.S. 377, 391 [43 L.Ed.2d 265, 276, 95 S.Ct. 1055]; see *United States* v. *Perez* (1824) 22 U.S. 579 [6 L.Ed. 165].) From this perspective, since section 1368 error requires reversal irrespective of prejudice (see, e.g., *People* v. *Hale, supra,* 44 Cal.3d at p. 541), defendant was never subjected to the possibility of a valid conviction. "Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy." (*Serfass* v. *United States, supra,* 420 U.S. at pp. 391-392 [43 L.Ed.2d at p. 276].) Put succinctly, "an accused must suffer jeopardy before he can suffer double jeopardy." (*Id.,* at p. 393 [43 L.Ed.2d at pp. 277].)

Defendant counters that principles of double jeopardy obtain because "[t]he jurisdictional concept involved . . . is not lack of jurisdiction of the cause but excess of jurisdiction. [Citation.]" (*In re Griffin* (1967) 67 Cal.2d 343, 347 [62 Cal.Rptr. 1, 431 P.2d 625]; see also, e.g., *People* v. *Superior Court (Prudencio)* (1927) 202 Cal. 165, 174 [259 P. 943], disapproved on other grounds in *People* v. *Superior Court (Howard)* (1968) 69 Cal.2d 491, 501 [72 Cal.Rptr. 330, 446 P.2d 138].) Accordingly, even when, for example, a case proceeds under a "fatally defective" indictment, "if the court had jurisdiction of the cause and the party, its judgment is not void, but only voidable"; and the defendant may invoke double jeopardy. (*United States* v. *Ball* (1896) 163 U.S. 662, 669-670 [41 L.Ed. 300, 302-303, 16 S.Ct. 1192]; *Benton* v. *Maryland* (1969) 395 U.S. 784, 797 [23 L.Ed.2d 707, 717, 89 S.Ct. 2056]; see *In re Hess* (1955) 45 Cal.2d 171, 175-176 [288 P.2d 5]; *In re Dellasala* (1977) 66 Cal.App.3d 453, 456-457 [136 Cal.Rptr. 99].) In defendant's view, the trial court retained subject matter jurisdiction even if it lacked discretion to act other than in compliance with section 1368.

 In arguing an absence of fundamental jurisdiction, the People rely substantially on our statement in *Marks I* that "once a trial court has ordered a competency hearing pursuant to section 1368, the court lacks jurisdiction to conduct further proceedings on the criminal charge or charges against the defendant until the court has determined whether he is competent." (*Marks I, supra,* 45 Cal.3d at p. 1337, citing *People* v. *Hale, supra,* 44 Cal.3d 531.) ██ ██ We also reiterated our earlier conclusion in *Hale*: " 'The sub silentio disposition of the section 1368 proceedings without a full competency hearing rendered the subsequent trial proceedings void because the court had been divested of jurisdiction to proceed pending *express* determination of the competency issue.' [Citation.]"[6] (*Marks I, supra,* 45 Cal.3d at p. 1344.) The People also note that since *People* v. *Pennington* (1967) 66 Cal.2d 508 [58 Cal.Rptr. 374, 426 P.2d 942] (*Pennington*),

---

[6]Preliminarily, the People contend these statements are dispositive because they constitute the law of the case. "The doctrine of the law of the case is this: That where, upon an appeal,

this court and the Courts of Appeal have consistently spoken in jurisdictional terms when referring to this species of error. (*Id.*, at p. 521 [trial court "pronounced judgment . . . without jurisdiction to do so."]; see *People* v. *Hale, supra*, 44 Cal.3d at p. 541 [trial court "has no jurisdiction to proceed"]; *In re Davis* (1973) 8 Cal.3d 798, 808 [106 Cal.Rptr. 178, 505 P.2d 1018] ["the matter is jurisdictional"]; *People* v. *Day* (1988) 201 Cal.App.3d 112, 119 [247 Cal.Rptr. 68] ["the court has no power to proceed"]; *People* v. *Conrad* (1982) 132 Cal.App.3d 361, 367 [182 Cal.Rptr. 912] [trial court "lacks jurisdiction to try, judge, or sentence a defendant"]; *People* v. *Tomas* (1977) 74 Cal.App.3d 75, 87-88 [141 Cal.Rptr. 453] ["Since the matter is jurisdictional [citation], the court lacks the power to try, judge, or sentence . . . ."]; cf. § 1367 [defendant "cannot be tried or adjudged to punishment while . . . mentally incompetent"].)

Despite their imperative tenor, however, none of the cited authorities squarely addressed a question of the trial court's jurisdiction to proceed notwithstanding an erroneous failure to hold a competency hearing. The principal consideration was invariably limited to the effect of section 1368 error on the underlying judgment of conviction; subsequent to *Pennington, supra*, 66 Cal.2d 508, the cases simply adopted its "without jurisdiction" language as a shorthand for reversible error.[7] While the opinions occasionally embellished the terminology, they never confronted the factual predicate to, and hence never engaged in, any substantial discussion or analysis of it. ▮ "Language used in any opinion is of course to be understood in the

the supreme court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress, both in the lower court and upon subsequent appeal, . . . this although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular. [Citations.]" (*Tally* v. *Ganahl* (1907) 151 Cal. 418, 421 [90 P. 1049].)

To state the doctrine is to demonstrate its present inapplicability: Apart from concluding the trial court committed reversible error, no other determination of law was "necessary to the decision" in *Marks I*. In particular, we did not resolve the question of jurisdiction because the facts did not warrant any such discussion at that time. As we explained in *People* v. *McDonald* (1984) 37 Cal.3d 351 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011], in this context the issue would become ripe only if and when the prosecution attempted to reprosecute for the higher degree offense and the defendant raised the bar of once in jeopardy. (*Id.*, at p. 383, fn. 31.) Those facts are now before us, and we must resolve them on the merits.

The Court of Appeal inferred from our omission in *Marks I* to ascribe "any postreversal significance" to the jury's failure to designate the degree of murder pursuant to section 1157 that we had sub silentio resolved the jurisdictional issue in favor of the People. On the contrary, as in *People* v. *McDonald, supra*, 37 Cal.3d at page 383, footnote 31, the question was not ripe for review; thus we implicitly reserved the question for such time as the facts required its resolution.

[7]One exception is *People* v. *Laudermilk* (1967) 67 Cal.2d 272 [61 Cal.Rptr. 644, 431 P.2d 228], discussed below. (See also *People* v. *Bute* (1969) 275 Cal.App.2d 143, 145 [79 Cal.Rptr. 721].)

light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered. [Citation.]" (*Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689]; *Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 734-735 [257 Cal.Rptr. 708, 771 P.2d 406].) ▮▮▮ The issue before us then is one of first impression. Consequently, we must view with caution seemingly categorical directives not essential to earlier decisions and be guided by this dictum only to the extent it remains analytically persuasive.

As explained below, we conclude that the failure to comply with the mandate of section 1368 does not effect a fundamental loss of jurisdiction, i.e., "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties. [Citation.]" (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942, 132 A.L.R. 715].) Rather, the trial court suffers an inability "to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites." (*Ibid.*; see, e.g., *Rodman* v. *Superior Court* (1939) 13 Cal.2d 262, 269 [89 P.2d 109].) Thus, while the court retains jurisdiction over the cause,[8] it acts in excess of that authority in failing to hold a competency hearing.

Our analysis begins with the statutory language, from which we educe no legislative directive or intent to oust the trial court of subject matter jurisdiction pending an evaluation of the defendant's competence. In pertinent part, section 1368, subdivision (c), provides that when the court has expressed a doubt as to the defendant's capacity to stand trial and has ordered a hearing thereon, "all proceedings in the criminal prosecution shall be suspended until the question of the present mental competence of the defendant has been determined." Among other definitions, "to suspend" means "to cause (as an action, process, practice, use) to cease for a time . . . [;] stay [as a hearing] . . . ." (Webster's New Internat. Dict. (3d ed. 1981) p. 2303.) The code provision itself is thus not cast in jurisdictional terms. Nor does the statutory scheme invite or accommodate judicial imposition of such a limitation. For example, in contrast to subdivision (c), subdivision (b) of section 1368 explicitly vests exclusive authority in the superior court to conduct the competency hearing; a municipal court may not do so even when the defendant is charged with a misdemeanor.[9] (*In re Shaw* (1953) 115 Cal.App.2d 753, 756 [252 P.2d 970]; see *Bean* v. *County of Los*

---

[8]The People contend only that the trial court suffered a loss of subject matter jurisdiction, not authority over defendant's person. Accordingly, we confine our consideration to this jurisdictional component.

[9]On the other hand, the municipal court does retain subject matter jurisdiction over the criminal proceedings even during the pendency of the competency hearing. (See § 1368.1, subd. (d).)

*Angeles* (1967) 252 Cal.App.2d 754, 760 [60 Cal.Rptr. 804], disapproved on other grounds in *In re Underwood* (1973) 9 Cal.3d 345, 348 [107 Cal.Rptr. 401, 508 P.2d 721]; cf. §§ 691, subd. (b) [definition of "competent court"], 777 [delineation of state and federal court jurisdiction]; *People* v. *Sanchez* (1942) 21 Cal.2d 466, 471-472 [132 P.2d 810] [differentiation between juvenile and superior court jurisdiction].)

Subsequent legislation buttresses this conclusion. Added in 1974, section 1368.1 now permits the trial court to consider several types of preliminary legal matters, including demurrers, suppression motions, and motions to dismiss for lack of reasonable cause, "capable of fair determination without the personal participation of the defendant" and notwithstanding the pendency of a competency hearing. (See *People* v. *Superior Court (Hulbert)* (1977) 74 Cal.App.3d 407, 413 [141 Cal.Rptr. 497]; see also *Jackson* v. *Indiana* (1972) 406 U.S. 715, 740-741 [32 L.Ed.2d 435, 452, 92 S.Ct. 1845].) These procedural changes necessarily assume the court retains subject matter jurisdiction despite restrictions on the scope of its authority. (See also *Hale* v. *Superior Court* (1975) 15 Cal.3d 221, 227-228 [124 Cal.Rptr. 57, 539 P.2d 817]; cf. *People* v. *Stankewitz* (1990) 51 Cal.3d 72, 87-89 [270 Cal.Rptr. 817, 793 P.2d 23] [court may first hold *Marsden* hearing (*People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]) to ensure effective assistance of counsel at competency hearing].)

Nor is there any constitutional imperative for imposing a jurisdictional limitation in this circumstance. In *Jackson* v. *Indiana, supra,* 406 U.S. 715, the United States Supreme Court noted that, as California now does to a certain extent, "[s]ome States have statutory provisions permitting pretrial motions to be made or even allowing the incompetent defendant a trial at which to establish his innocence, without permitting a conviction." (*Id.,* at p. 741 [32 L.Ed.2d at p. 452], fn. omitted; see also *id.,* at p. 741, fn. 30 [32 L.Ed.2d at p. 452].) In this regard, the high court expressly declined "to preclude the States from allowing, at a minimum, an incompetent defendant to raise certain defenses such as insufficiency of the indictment, or make certain pretrial motions through counsel." (*Id.,* at p. 741 [32 L.Ed.2d at p. 452].) Moreover, while in *Pate* v. *Robinson* (1966) 383 U.S. 375, 387 [15 L.Ed.2d 815, 823, 86 S.Ct. 836], the court emphasized "the difficulty of retrospectively determining an accused's competence to stand trial . . . ," in *Drope* v. *Missouri* (1975) 420 U.S. 162, 182-183 [43 L.Ed.2d 103, 119, 95 S.Ct. 896], it accepted the possibility of a constitutionally adequate posttrial or even postappeal evaluation of the defendant's pretrial competence. (See also *Bishop* v. *United States* (1956) 350 U.S. 961 [100 L.Ed.2d 835, 76 S.Ct. 440] (*per curiam*) [judgment vacated and case remanded "for a hearing on the sanity of [the defendant] at the time of his trial"].) In no case did the

Supreme Court suggest that substantial evidence of the defendant's incompetence impaired or even implicated the trial court's subject matter jurisdiction.

Having identified no statutory or constitutional imperative, we turn to the seemingly entrenched judicial gloss on which the People premise their jurisdictional argument. The precise passage spawning all subsequent references appears in *Pennington, supra,* 66 Cal.2d at page 521: "In trying defendant without first determining at a hearing his competence to stand trial, the court both denied to defendant a substantial right [citations] and pronounced judgment on him without jurisdiction to do so." A review of prior decisions reveals no similar "jurisdictional" characterization of the trial court's failing, save for a single oblique reference in *People v. Vester* (1933) 135 Cal.App. 223, 228 [26 P.2d 685] ["an omission by the trial court to exercise what may be termed a jurisdictional duty resulted"]. Rather, earlier opinions denominated the error a "denial of substantial rights" (see *People v. Westbrook* (1964) 62 Cal.2d 197, 204 [41 Cal.Rptr. 809, 397 P.2d 545]; *People v. Jackson* (1951) 105 Cal.App.2d 811, 816 [234 P.2d 261]; see *People v. Vester, supra,* 135 Cal.App. at p. 237; *People v. Grace* (1926) 77 Cal.App. 752, 762 [247 P. 585]) and a "miscarriage of justice." (See *In re Dennis* (1959) 51 Cal.2d 666, 671 [335 P.2d 657]; *People v. Merkouris* (1956) 46 Cal.2d 540, 553 [297 P.2d 999]; *People v. Aparicio* (1952) 38 Cal.2d 565, 568 [241 P.2d 221]; *People v. Renteria* (1960) 183 Cal.App.2d 548, 551 [6 Cal.Rptr. 640].) Some cases also drew upon the statutory language in describing the trial as "interrupted" (*People v. Rothrock* (1936) 8 Cal.2d 21, 24 [63 P.2d 807]) or "arrested" (*People v. West* (1914) 25 Cal.App. 369, 371 [143 P. 793]) pending outcome of the section 1368 hearing. (See also *People v. Ah Ying* (1871) 42 Cal. 18, 21; *People v. Grace, supra,* 77 Cal.App. at p. 763.) Thus, prior to *Pennington, supra,* 66 Cal.2d 508, a substantial body of extant authority contained virtually no suggestion that section 1368 error raised a jurisdictional bar.

Closer analysis of *Pennington* discloses no support for a departure from this settled law. In that case, we reexamined our statutory scheme in light of the then recent decision of *Pate v. Robinson, supra,* 383 U.S. 375, in which the federal high court held that when a defendant presents sufficient evidence, he is "constitutionally entitled to a hearing on the issue of his competence to stand trial." (*Id.,* at p. 377 [15 L.Ed.2d at p. 818].) Failure to make meaningful inquiry at such a hearing deprives him of a fair trial. (*Id.,* at p. 385 [15 L.Ed.2d at p. 822].)

Thus informed of its constitutional mandate, this court held, "The decision of the United States Supreme Court in *Pate v. Robinson* demonstrates that

the type of 'hearing' which due process requires when the accused has come forward with substantial evidence of present insanity has not been accorded the accused when the judge merely takes evidence to guide him in determining if he should declare the existence of a 'doubt' [as to this question]." (*Pennington, supra,* 66 Cal.2d at pp. 520-521.) Rather, the court must observe the express terms of section 1368, suspend further criminal proceedings, and take evidence "to the end of determining an issue of fact and [making] a decision on the basis of that evidence. [Citation.]" (*Id.,* at p. 521.) Accordingly, we overruled prior decisions leaving such further inquiry to the trial court's discretion even "when defendant has come forward with substantial evidence of present mental incompetence . . . ." (*Id.,* at pp. 518-519.)

The holding in *Pennington, supra,* 66 Cal.2d 508, was thus premised on the fundamental inequity implicit in the trial of an individual unable to comprehend the proceedings and assist in his defense. Indeed, expounding the point shortly thereafter, we explained that section 1368 error "goes to the legality of the proceedings because 'conviction of an accused person while he is legally incompetent violates due process . . . .'" (*People* v. *Laudermilk, supra,* 67 Cal.2d at p. 282, quoting *Pate* v. *Robinson, supra,* 383 U.S. at p. 378 [15 L.Ed.2d at p. 818]; *People* v. *Hale, supra,* 44 Cal.3d at p. 539; see also *In re Dennis, supra,* 51 Cal.2d at pp. 672-673 [due process requires defendant's mental as well as physical presence at trial].) The United States Supreme Court has also expressly held "that the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial." (*Drope* v. *Missouri, supra,* 420 U.S. at p. 172 [43 L.Ed.2d at p. 113].)

The principle underlying both the statutory scheme and the constitutional mandate is of ancient derivation and deeply rooted in our sense of basic fairness: "'"[T]here may be circumstances lying in his private knowledge, which would prove his innocency, of which he can have no advantage, because not known to the persons who shall take upon them his defence."'" (*People* v. *Perry* (1939) 14 Cal.2d 387, 398 [94 P.2d 559, 124 A.L.R. 1123], quoting *Freeman* v. *People* (N.Y.) 4 Denio 9, 20 [47 Am. Dec. 216], quoting 4 Harg., State Trials, 205; see *In re Buchanan* (1900) 129 Cal. 330, 333 [61 P. 1120], quoting 4 Blackstone's Commentaries 24; see also *Drope* v. *Missouri, supra,* 420 U.S. at p. 171 [43 L.Ed.2d at p. 113].) While section 1367 et seq. "implements [this] fundamental canon" (*People* v. *Laudermilk, supra,* 67 Cal.2d at p. 282), judicial construction enforces it by compelling reversal in the event of any compromise.

It is in this context that *Pennington, supra,* 66 Cal.2d 508, and its progeny must be read and in this sense that the reference to loss of jurisdiction must

be understood. The trial court acts "without jurisdiction" because its authority is constitutionally and statutorily restricted to holding a competency hearing before proceeding with any other matters. When the court fails to discharge this obligation, the resultant denial of due process is "so fundamental and persuasive that [it] require[s] reversal without regard to the facts or circumstances of the particular case. [Citations.]" (*Delaware* v. *Van Arsdall* (1986) 475 U.S. 673, 681-682 [89 L.Ed.2d 674, 685, 106 S.Ct. 1431]; see also *Gideon* v. *Wainwright* (1963) 372 U.S. 335, 344-345 [9 L.Ed.2d 799, 805, 83 S.Ct. 792, 93 A.L.R.2d 733] [deprivation of right to counsel at trial]; *People* v. *Sarazzawski* (1945) 27 Cal.2d 7, 16 [161 P.2d 934] [denial of new trial motion without reasonable opportunity to be heard (§ 1202)]; see generally *Arizona* v. *Fulminante* (1991) 499 U.S. ___, ___ [113 L.Ed.2d 302, 331, 111 S.Ct. 1246, 1265 (conc. opn. of Rehnquist, C. J.) [no harmless error review of "structural defect affecting the framework within which the trial proceeds"].)

Given this historical and legal perspective, we discern no reasoned basis for finding that trial error, even of this magnitude, implicates jurisdiction in any fundamental sense.[10] ■ "Where a . . . court has power . . . to proceed on the merits, that is jurisdiction of the proceedings." (*United States* v. *Williams* (1951) 341 U.S. 58, 68 [95 L.Ed. 747, 754, 71 S.Ct. 595].) ■ We therefore conclude that the trial court does not lose subject matter jurisdiction when it fails to hold a competency hearing, but rather acts in excess of jurisdiction by depriving the defendant of a fair trial. (See *Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d at p. 290.) Although the

---

[10]See, e.g., *In re Sands* (1977) 18 Cal.3d 851, 857 [135 Cal.Rptr. 777, 558 P.2d 863] (on habeas corpus, "concept of fundamental jurisdictional error . . . encompasses any error of sufficient magnitude that the trial court may be said to have acted in excess of jurisdiction"); *In re Griffin, supra,* 67 Cal.2d at page 347 (jurisdictional concept in cases precluding revocation of probation at end of probationary term "is not lack of jurisdiction of the cause but excess of jurisdiction"); *In re Clark* (1959) 51 Cal.2d 838, 840 [337 P.2d 67] (modification of probation based on same facts as original probation "is in excess of the jurisdiction of the court" and court "was without jurisdiction" to make such an order); *In re Hess, supra,* 45 Cal.2d at page 175 (court violated due process and "therefore acted in excess of its jurisdiction" in entering judgment on charge not contained in information and not lesser included offense); *Abelleira* v. *District Court of Appeal, supra,* 17 Cal.2d at page 291 ("concept of jurisdiction embraces a large number of ideas of similar character, . . . some derived from the requirement of due process"); *Rodman* v. *Superior Court, supra,* 13 Cal.2d at page 269 ("it seems well settled . . . that when a statute authorizes prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction"); see generally 4 Witkin and Epstein, California Criminal Law (2d ed. 1989) Jurisdiction and Venue, section 1828, page 2165 ("Acts in substantial disregard of important limitations, or which deny fundamental rights or defenses, are *in excess of jurisdiction.*").

judgment may be a nullity, for double jeopardy purposes the proceedings are not.[11]

## B. *Double Jeopardy*

 As we anticipated in *People* v. *McDonald, supra,* the proper analytical relationship between section 1157 and principles of double jeopardy "is not immediately obvious" (37 Cal.3d at p. 383, fn. 31); and, indeed, that determination "has not proved to be facile or routine." (*United States* v. *DiFrancesco* (1980) 449 U.S. 117, 127 [66 L.Ed.2d 328, 339, 101 S.Ct. 426].) ██ Nevertheless, after careful consideration of both federal and state precedents and the constitutional policies they reflect, we conclude that a defendant whose conviction has been deemed of a lesser degree crime by operation of section 1157[12] may invoke the protections of double jeopardy[13] to the same extent as one whose similar conviction has followed an express finding of the lesser degree by the trier of fact.

"The fundamental nature of the guarantee against double jeopardy can hardly be doubted. Its origins can be traced to Greek and Roman times, and it became established in the common law of England long before this Nation's independence." (*Benton* v. *Maryland, supra,* 395 U.S. at p. 795 [23 L.Ed.2d at p. 716], citation and fn. omitted.) ██ "The prohibition is not against being twice punished, but against being twice put in jeopardy; and

---

[11]As our prior decisions unequivocally attest, the naked power conferred by subject matter jurisdiction cannot sanction a violation of rights. In concluding that the trial court retains fundamental authority over the cause, in no respect do we endorse, condone, or excuse a failure to comply with the express mandate of section 1368.

[12]Section 1157 provides: "Whenever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime or attempted crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree."

Throughout most of this discussion, we are principally concerned with the operation and effect of the second sentence by which a crime is deemed of the lesser degree. Although we may make reference to defendant's conviction for purposes of illustration, section 1157 is a statute of general application, and our analysis and conclusions are not reserved for murder or capital offenses.

[13]The double jeopardy clause of the Fifth Amendment to the United States Constitution declares, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb." The federal guaranty is applicable to the states through the Fourteenth Amendment. (*Benton* v. *Maryland, supra,* 395 U.S. at p. 794 [23 L.Ed.2d at pp. 715-716], overruling *Palko* v. *Connecticut* (1937) 302 U.S. 319 [82 L.Ed. 288, 58 S.Ct. 149].) "Thus, the minimum standards of double jeopardy protection for criminal defendants, as enunciated by numerous United States Supreme Court decisions, are binding on this court. Of course, we remain free to delineate a higher level of protection under article I, section 15 (formerly § 13), of the California Constitution. [Citations.]" (*Stone* v. *Superior Court* (1982) 31 Cal.3d 503, 510 [183 Cal.Rptr. 647, 646 P.2d 809].)

the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial." (*United States* v. *Ball, supra,* 163 U.S. at p. 669 [41 L.Ed. at p. 302].) ▆ Should a defendant secure reversal on appeal, however, criminal proceedings are subject to reinstatement. (*United States* v. *DiFrancesco, supra,* 449 U.S. at p. 131 [66 L.Ed.2d at p. 342].)

The scope of any reprosecution may, nevertheless, be restricted. Principally, double jeopardy "prohibits retrial after a conviction has been reversed because of insufficiency of the evidence. [Citations.]" (*United States* v. *DiFrancesco, supra,* 449 U.S. at p. 131 [66 L.Ed.2d at p. 342].) A defendant may also raise the bar of former conviction "when the first jury 'was given a full opportunity to return a verdict' on [a greater] charge and instead reached a verdict on the lesser charge. [Citation.]" (*Price* v. *Georgia* (1970) 398 U.S. 323, 329 [26 L.Ed.2d 300, 305, 90 S.Ct. 1757]; accord, *People* v. *Serrato* (1973) 9 Cal.3d 753, 760 [109 Cal.Rptr. 65, 512 P.2d 289], disapproved on other grounds in *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144]; *Gomez* v. *Superior Court* (1958) 50 Cal.2d 640, 647-649 [328 P.2d 976]; cf. *People* v. *Henderson* (1963) 60 Cal.2d 482, 495-497 [35 Cal.Rptr. 77, 386 P.2d 677] [no liability for death penalty on retrial after sentence of life without possibility of parole].) ▆ ▬ ▆ ▆ Accordingly, to gauge the import and application of double jeopardy principles in the present context, we must take careful measure of the precise terms and circumstances of defendant's conviction.[14]

As we indicated in *Marks I*, contrary to the statutory mandate, the jury failed to specify whether it found defendant guilty of first or second degree

[14]We must determine this question even though defendant obtained a reversal of his conviction on appeal. "[A]ny error affecting the express verdict of guilty does not affect the conclusiveness of the implied verdict of acquittal. [Citations.]" (*In re Hess, supra,* 45 Cal.2d at p. 176.) A similar rule applies to a plea of once in jeopardy, i.e., a "former conviction." (*Price* v. *Georgia, supra,* 398 U.S. at p. 329 [26 L.Ed.2d at p. 305]; see generally *Green* v. *United States* (1957) 355 U.S. 184, 191-194 [2 L.Ed.2d 199, 78 S.Ct. 221, 61 A.L.R.2d 1119].) In this situation, the defendant is not obligated to resolve the tension generated by invoking conflicting constitutional protections, but may preserve for himself whatever double jeopardy benefits accrued in his first trial notwithstanding some fatal defect in the proceedings. (*Benton* v. *Maryland, supra,* 395 U.S. at pp. 796-797 [23 L.Ed.2d at p. 717]; *Kepner* v. *United States* (1904) 195 U.S. 100, 135 [49 L.Ed. 114, 126-127, 24 S.Ct. 797] (dis. opn. of Holmes, J.); see *Gomez* v. *Superior Court, supra,* 50 Cal.2d at pp. 650-653.) To conclude otherwise would unduly impair the defendant's right of appeal. (See *People* v. *Gilmore* (1854) 4 Cal. 376, 378.)

As we explain below, our state law requires and directs regularity in the jury's verdict. (§ 1157.) The operation of section 1157 thus determines what, if any, favorable results accrued under defendant's conviction. To say defendant may be retried because he upset the judgment on appeal begs the question; the constitutionally permissible scope of any retrial depends upon an accurate denomination of that conviction. (Cf. *People* v. *Travers* (1887) 73 Cal. 580, 582 [15 P. 293] [no double jeopardy claim when § 1157 error required reversal of

murder. (*Marks I, supra*, 45 Cal.3d at p. 1344.) Section 1157 requires that the trier of fact "must find the degree of crime or attempted crime of which [the defendant] is guilty"; but prior to 1949 it did not contain any remedy or further directive in the event of an omission. Because this type of irregularity invariably necessitated reversal and retrial (*People* v. *Dixon* (1979) 24 Cal.3d 43, 51 [154 Cal.Rptr. 236, 592 P.2d 752]; see, e.g., *People* v. *Brown* (1945) 69 Cal.App.2d 602, 606 [159 P.2d 686]), the Legislature amended the language to provide that if the jury returned an incomplete verdict, "the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree." (§ 1157.) ▮ The operation of this proviso is categorical and conclusive, "even in situations in which the jury's intent to convict of the greater degree is demonstrated by its other actions . . . ." (*People* v. *McDonald, supra*, 37 Cal.3d at p. 382 [second degree conviction notwithstanding special circumstance finding when jury failed to specify degree].) The court has no power to recall the jury after its discharge or otherwise to rectify the deficiency.[15] (37 Cal.3d at pp. 380-383; cf. *People* v. *Jenkins* (1880) 56 Cal. 4, 7 [trial court "can, at any time while the jury are before it, and under its control, see that [the verdict] is amended in form so as to meet the requirements of law."].)

The law constrains reviewing courts as well as trial courts in this regard. (*People* v. *Lamb* (1986) 176 Cal.App.3d 932, 934 [222 Cal.Rptr. 570]; see, e.g., *People* v. *Stephenson* (1974) 10 Cal.3d 652, 656 [111 Cal.Rptr. 556, 517 P.2d 820], disapproved on other grounds in *People* v. *Pope* (1979) 23 Cal.3d 412, 426, fn. 16 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1]; *People* v. *Morga* (1969) 273 Cal.App.2d 200, 202 [78 Cal.Rptr. 120].) ▮ Despite the jury's special circumstance finding in this case, we may not imply a verdict of first degree murder in the absence of an express indication to that effect. (*People* v. *McDonald, supra*, 37 Cal.3d at p. 382; *People* v. *Thomas* (1978) 84 Cal.App.3d 281, 284 [148 Cal.Rptr. 532].) To the contrary, we are compelled to find on this record "as a matter of law . . . defendant was convicted of second degree murder. [Citation.]" (*People* v. *McDonald, supra*, 37 Cal.3d at p. 383, fn. omitted.) Accordingly, that conviction controls our

---

entire conviction (prior to 1949 amendment of statute)]; *People* v. *O'Brien* (1933) 129 Cal.App. 660, 662 [19 P.2d 257] [same].)

[15]Noting the rigid and "formalistic" manner in which courts must apply the statute, Justice Arguelles in *People* v. *Bonillas* (1989) 48 Cal.3d 757 [257 Cal.Rptr. 895, 771 P.2d 844], invited the Legislature "to reexamine the current language and prevailing interpretation of section 1157 and to make any modification in the provision which it deems appropriate." (48 Cal.3d at p. 804 (conc. opn. of Arguelles, J.).) Effective January 1, 1991, the Legislature amended section 1164, subdivision (b), to require that "[n]o jury shall be discharged until the court has verified on the record that the jury has . . . reached a verdict . . . on all issues before it, including, but not limited to, the degree of the crime or crimes charged . . . ." We emphasize the importance of this safeguard against nonconforming verdicts and urge strict compliance to forestall procedural quagmires such as the one we labor through today.

assessment of the viability of defendant's pleas of former acquittal and once in jeopardy.

Defendant urges that by operation of section 1157 the law implicitly absolved him of first degree murder, thereby precluding his reprosecution for that offense as a "former acquittal." (See *Green* v. *United States, supra,* 355 U.S. 184.) We agree that the legal effect of the statute coincides in significant respects with an implied acquittal: It is a final verdict of the lesser degree crime after a determination on the merits. (See *United States* v. *Martin Linen Supply Co.* (1977) 430 U.S. 564, 571 [51 L.Ed.2d 642, 651, 97 S.Ct. 1349]; cf. *Stone* v. *Superior Court, supra,* 31 Cal.3d at p. 516 ["discharge of the jury without a verdict is tantamount to an acquittal" once jeopardy attaches].)

For purposes of delimiting the scope of retrial after a successful appeal, however, such a finding is generally contingent upon an implied or express determination that the evidence failed to sustain the prosecution's case.[16] By contrast, section 1157 renders a conviction of the lesser degree by operation of law and does not establish or necessarily imply an insufficiency of the evidence to convict of the greater degree.[17] Indeed, on occasion "form triumphs over substance, and the law is traduced" (*People* v. *Johns* (1983) 145 Cal.App.3d 281, 295 [193 Cal.Rptr. 182]) when the record contains

---

[16]See, e.g., *Smalis* v. *Pennsylvania* (1986) 476 U.S. 140, 144-145 [90 L.Ed.2d 116, 121, 106 S.Ct. 1745] (ruling on demurrer at close of prosecution's case-in-chief constituted finding "that as a matter of law the State's evidence is insufficient"); *Burks* v. *United States* (1978) 437 U.S. 1, 16 [57 L.Ed.2d 1, 12, 98 S.Ct. 2141] (implied acquittal when reviewing court reversed for "failure of proof at trial"); *United States* v. *Martin Linen Supply Co., supra,* 430 U.S. at page 572 [51 L.Ed.2d at page 651] (judgments of acquittal following mistrial granted because evidence was "legally insufficient to sustain a conviction"); *United States* v. *Sisson* (1970) 399 U.S. 267, 288-290 [26 L.Ed.2d 608, 623-624, 90 S.Ct. 2117] (arrest of judgment was in reality postverdict directed acquittal based on evidence adduced at trial); *Ashe* v. *Swenson* (1970) 397 U.S. 436, 445 [25 L.Ed.2d 469, 476, 90 S.Ct. 1189] (double jeopardy embodies doctrine of collateral estoppel); *Price* v. *Georgia, supra,* 398 U.S. at page 329 [26 L.Ed.2d at page 305] (implied acquittal of first degree murder when defendant convicted of manslaughter); *Green* v. *United States, supra,* 355 U.S. at page 190 [2 L.Ed.2d at page 205] (implied acquittal of first degree murder when defendant convicted of second degree).

[17]Nevertheless, a defendant's conviction is not "reduced" by operation of law since section 1157 becomes operative only in the absence of an express jury finding on the degree of the crime. (Cf. § 1181 [on motion for new trial, court may modify to lesser degree offense verdict that is contrary to law or evidence].) For example, in this case the original trial court, Judge Eric Younger, entered an erroneous judgment on the assumption the jury had rendered a verdict of first degree murder, apparently because of the special circumstance finding. (*People* v. *McDonald, supra,* 37 Cal.3d at p. 380.) When the jury was discharged after submitting a nonconforming verdict, the court should have proceeded in accordance with the express provisions of section 1157 and entered a judgment on second degree murder. Had the law been complied with in the first instance, no implication would arise that defendant's conviction is being "reduced."

"clear and reliable evidence that the jury must have actually found the defendant guilty of the higher degree offense." (*People* v. *Bonillas, supra*, 48 Cal.3d at pp. 802-803 (conc. opn. of Arguelles, J.); see, e.g., *People* v. *McDonald, supra*, 37 Cal.3d at pp. 379-383; *People* v. *Beamon* (1973) 8 Cal.3d 625, 629, fn. 2 [105 Cal.Rptr. 681 [504 P.2d 905].)

In any event, we need not decide the former acquittal issue. The overriding fact remains that in fixing a defendant's conviction at the lesser degree, section 1157 conclusively resolves the question of his guilt for the greater degree crime in his favor after trial for that offense. In this circumstance, controlling United States Supreme Court precedents compel we accommodate a plea of "once in jeopardy."[18] (§ 1016.)

In the seminal case of *Green* v. *United States, supra*, 355 U.S. 184, the defendant was charged with both first and second degree murder; the jury found him guilty of second degree murder but failed to return a verdict on first degree. Green secured a reversal of his conviction. The prosecution again charged him with first degree murder, and the trial court rejected his plea of double jeopardy. On retrial, the jury convicted of the greater offense.

The Supreme Court reversed, relying on both a finding of an implied acquittal and the broader principle of once in jeopardy. (*Price* v. *Georgia, supra*, 398 U.S. at p. 329 [26 L.Ed.2d at p. 305].) With respect to the latter, the high court observed that "the jury was dismissed without returning any express verdict on [first degree murder] and without Green's consent. Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy, that Green's jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense. [Citation.]" (*Green* v. *United States, supra*, 355 U.S. at p. 191 [2 L.Ed.2d at p. 206]; accord, *Price* v. *Georgia, supra*, 398 U.S. at p. 329 [26 L.Ed.2d at p. 305].)

We discern no constitutionally sustainable logic or rationale by which to distinguish the present case. To suggest defendant was not "in direct peril of being convicted and punished for first degree murder at his first trial" or that he was not "forced to run the gantlet once on that charge" (*Green* v. *United*

---

[18]For the same reason, we need not determine whether section 1157 could be construed as a directed verdict, which for double jeopardy purposes operates in the same manner and to the same extent as an implied acquittal. (*United States* v. *Martin Linen Supply Co., supra*, 430 U.S. at p. 573 [51 L.Ed.2d at p. 652]; *Fong Foo* v. *United States* (1962) 369 U.S. 141, 143 [7 L.Ed.2d 629, 631, 82 S.Ct. 671].)

*States, supra,* 355 U.S. at p. 190 [2 L.Ed.2d at p. 206]) would indefensibly trivialize "the heavy personal strain" imposed by a criminal trial, particularly one for a capital offense. (*United States* v. *Jorn* (1971) 400 U.S. 470, 479 [27 L.Ed.2d 543, 553, 91 S.Ct. 547] (plur. opn.).) Correspondingly, "[t]o be charged and to be subjected to a second trial for first-degree murder is an ordeal not to be viewed lightly." (*Price* v. *Georgia, supra,* 398 U.S. at p. 331 [26 L.Ed.2d at p. 306], fn. omitted.) The prosecution had a full and fair opportunity to convince the trier of fact of defendant's guilt for first degree murder. Although the jury did return a verdict, it nevertheless did not convict him of that charge; and by operation of law its verdict became fixed at second degree murder. In this circumstance, the application of double jeopardy is manifest: "the first verdict, limited as it was to the lesser included offense, required that the retrial be limited to that lesser offense." (*Id.,* at p. 327 [26 L.Ed.2d at p. 304]; accord, *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592, 608 [119 Cal.Rptr. 302, 531 P.2d 1086].) We must perforce conclude defendant's jeopardy for first degree murder terminated when the jury was discharged from the guilt phase and a second degree verdict was rendered pursuant to section 1157. (See also *In re Hess, supra,* 45 Cal.2d at p. 176; cf. *Kellett* v. *Superior Court* (1966) 63 Cal.2d 822, 827-828 [48 Cal.Rptr. 366, 409 P.2d 206] [§ 654 precludes prosecution for more serious offense after defendant has been acquitted or convicted of lesser charge].)

The fact the trial court committed reversible error at the outset of the proceedings and defendant successfully appealed his conviction on that ground assumes no analytical significance in this context. When a defendant has once endured the rigors of trial and the jury fails to convict despite a full opportunity to do so, he may not be required to face that ordeal again regardless of any collateral defects in the original proceeding. (*Benton* v. *Maryland, supra,* 395 U.S. at pp. 796-797 [23 L.Ed.2d at p. 717]; see, *ante,* fn. 14; cf. *United States* v. *Jorn, supra,* 400 U.S. at p. 483 [27 L.Ed.2d at p. 555] (plur. opn.) [reprosecution after unnecessary mistrial subjects defendant to "same personal strain and insecurity" even if trial court is well intentioned].) Moreover, as the court in *Green* v. *United States, supra,* explained in rejecting the government's waiver argument, "Green was not convicted of first degree murder and that offense was not involved in his appeal." (355 U.S. at p. 193 [2 L.Ed.2d at p. 207].) Here, the court should have entered judgment on second degree murder, which then would have been the properly appealed conviction had defendant chosen to pursue the matter.[19] (See *People* v. *Hughes* (1959) 171 Cal.App.2d 362, 370 [340 P.2d 679]; *ante,* fn. 17.)

---

[19]This conclusion also avoids the potential for impairing the due process right of appeal. (See *North Carolina* v. *Pearce* (1969) 395 U.S. 711, 724 [23 L.Ed.2d 656, 668-669, 89 S.Ct. 2072].) "Conditioning an appeal of one offense on a coerced surrender of a valid plea of former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional

We perceive no unfairness to the People in our holding. The prosecution is not deprived of its "one complete opportunity to convict those who have violated [the] laws." (*Arizona* v. *Washington* (1978) 434 U.S. 497, 509 [54 L.Ed.2d 717, 730, 98 S.Ct. 824]; *Burks* v. *United States, supra,* 437 U.S. at p. 16 [57 L.Ed.2d at pp. 12-13].) ▬▬ ▬ ▬ When the verdict is "deemed of the lesser degree" by operation of law, the prosecution bears at least partial responsibility.[20] The consequences of an irregular verdict are well settled, and nothing precludes the prosecution from calling the deficiency to the court's attention before it discharges the panel.[21] (See §§ 1161-1164.) ▬▬ Since any failure to do so results from neglect rather than lack of notice and opportunity to be heard, the People's right to due process is accordingly not offended. (See *United States* v. *Jorn, supra,* 400 U.S. at p. 486 [27 L.Ed.2d at p. 557] (plur. opn.); *United States* v. *Ball, supra,* 163 U.S. at p. 668 [41 L.Ed. at p. 302] [prosecutor cannot " 'take advantage of his own wrong' "]; see also *Brown* v. *Ohio* (1977) 432 U.S. 161, 165 [53 L.Ed.2d 187, 193, 97 S.Ct. 2221] [double jeopardy guaranty "serves principally as a restraint on courts and prosecutors"].)

▬▬ The United States Supreme Court has repeatedly counseled against subjecting a defendant to further proceedings to allow the prosecution the opportunity to ameliorate trial deficiencies, evidentiary or procedural, that could have been otherwise timely corrected. (See *Swisher* v. *Brady* (1978) 438 U.S. 204, 215-216 [57 L.Ed.2d 705, 715, 98 S.Ct. 2699]; *Ashe* v. *Swenson, supra,* 397 U.S. at pp. 446-447 [25 L.Ed.2d at p. 477] [collateral estoppel]; *United States* v. *Ball, supra,* 163 U.S. at p. 667 [41 L.Ed. at p. 302] [prosecutor cannot " 'allege[] his own inaccuracy or neglect, as a reason for a second trial' "]; see also *Fong Foo* v. *United States, supra,* 369 U.S. 141 [erroneous midtrial dismissal].) The purpose of double jeopardy "is subserved by refusing to permit repeated retrials of a defendant in order to

bar against double jeopardy." (*Green* v. *United States, supra,* 355 U.S. at pp. 193-194 [2 L.Ed.2d at p. 208], fn. omitted; *People* v. *Henderson, supra,* 60 Cal.2d at pp. 496-497.)

We decline the People's invitation to distinguish the fact that in this case defendant's capital conviction statutorily compelled review. (§ 1239, subd. (b).) We resolve the issues before us for all defendants who, irrespective of the nature of their offense, may premise a plea of once in jeopardy upon the operation of section 1157. Moreover, it would be anomalous if not unconscionable to formulate a less favorable rule for those under judgment of death, thereby implicating equal protection as well as due process.

[20]The defendant has no obligation to bring the omission to the court's attention. As we have stated in a related context, "When a trial court proposes to discharge a jury without legal necessity therefor, the defendant is under no duty to object in order to claim the protection of the constitutional guarantee [against double jeopardy], and his mere silence in the face of an ensuing discharge cannot be deemed a waiver. [Citations.]" (*Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 713 [87 Cal.Rptr. 361, 470 P.2d 345]; *People* v. *Upshaw* (1974) 13 Cal.3d 29, 34 [117 Cal.Rptr. 668, 528 P.2d 756]; cf. *United States* v. *Scott* (1978) 437 U.S. 82, 98-99 [57 L.Ed.2d 65, 79, 98 S.Ct. 2187] [jeopardy not implicated by defendant's "deliberately choosing to seek termination . . . on a basis unrelated to factual guilt or innocence"].)

[21]See, *ante,* footnote 15.

remedy errors of law . . . made by the trial court in the course of trial." (*People* v. *Valenti* (1957) 49 Cal.2d 199, 209 [316 P.2d 633]; *People* v. *Webb* (1869) 38 Cal. 467, 476; *Mouser* v. *Superior Court* (1982) 136 Cal.App.3d 110 [186 Cal.Rptr. 21].) At the very least, repeated trials impermissibly permit the prosecution to "gain[] an advantage from what it learns at the first trial about the strengths of the defense case and the weaknesses of its own." (*United States* v. *DiFrancesco, supra,* 449 U.S. at p. 128 [66 L.Ed.2d at p. 340]; accord, *Stone* v. *Superior Court, supra,* 31 Cal.3d at p. 515.) This process in turn encourages "the governmental overreaching that double jeopardy is supposed to prevent." (*Ohio* v. *Johnson* (1984) 467 U.S. 493, 502 [81 L.Ed.2d 425, 435, 104 S.Ct. 2536].)

■ Moreover, allowing reprosecution for the greater degree offense would essentially afford the People otherwise unavailable recourse from the mandatory and conclusive operation of section 1157. This result would not only circumvent and contravene the statutory imperative, it would undermine the constitutional impetus favoring finality of judgments. "It has been said that 'a' or 'the' 'primary purpose' of the [double jeopardy clause] was 'to preserve the finality of judgments,' [citation] . . . ." (*United States* v. *DiFrancesco, supra,* 449 U.S. at p. 128 [66 L.Ed.2d at p. 340]; *Arizona* v. *Washington, supra,* 434 U.S. at p. 503 [54 L.Ed.2d at pp. 726-727].) To reward the prosecution for its inadvertence would thus substantially subvert a multiplicity of traditional double jeopardy protections.

Accordingly, guided by the weight of precedent and the substantial policy considerations they reflect, we hold that when a defendant's conviction is "deemed to be of the lesser degree" by operation of section 1157, it "is to be accorded constitutional finality and conclusiveness similar to that which attaches to a jury's verdict of acquittal." (*United States* v. *DiFrancesco, supra,* 449 U.S. at p. 132 [66 L.Ed.2d at p. 343].) If the defendant obtains a reversal of that conviction, he may not be subject to retrial for any more serious offense.[22]

## IV. CONCLUSION

As its ancient lineage attests, the double jeopardy clause is no mere "technicality"; it is an integral part of "the framework of procedural protections which the Constitution establishes for the conduct of a criminal trial."

[22]Defendant sought to interpose double jeopardy objections to his reprosecution not only on the substantive charges, but also for the lying-in-wait special-circumstance allegation and the personal use of a firearm allegation, both of which the jury originally found not true. (See, *ante,* fn. 3.) In light of our conclusions, we need not consider this contention with respect to the lying-in-wait special circumstance. As to the personal use of a firearm allegation, defendant's point is well taken: The jury's rejection constituted an express acquittal on the enhancement and forecloses any retrial. (*People* v. *Pettaway* (1988) 206 Cal.App.3d 1312, 1331-1332 [254 Cal.Rptr. 436]; see *People* v. *Asbury* (1985) 173 Cal.App.3d 362, 366 [218 Cal.Rptr. 902].)

(*United States* v. *Jorn, supra,* 400 U.S. at p. 479 [27 L.Ed.2d at p. 553] (plur. opn.).) Effectuating the spirit as well as the letter of its liberality, courts have "disparaged 'rigid, mechanical' rules in [its] interpretation . . . . [Citation.]" (*Serfass* v. *United States, supra,* 420 U.S. at p. 390 [43 L.Ed.2d at p. 275].) In animating our own independent "vital safeguard," we have expressly refused to perpetuate "spurious distinction[s]" at the risk of "giving our constitutional prohibition against twice in jeopardy a 'narrow, grudging application' unsupported by either logic or reason." (*Gomez* v. *Superior Court, supra,* 50 Cal.2d at p. 649; accord, *Green* v. *United States, supra,* 355 U.S. at p. 198 [2 L.Ed.2d at p. 210].)

Consistent with this tradition, we continue to eschew a parsing attitude unworthy of this "fundamental ideal in our constitutional heritage . . . ." (*Benton* v. *Maryland, supra,* 395 U.S. at p. 794 [23 L.Ed.2d at p. 716].) In amending section 1157, our citizenry has demonstrated its willingness on occasion to forgo exaction of the law's full measure of punishment in exchange for finality of judgments and fair play. We must be no less generous in applying clearly implicated constitutional principles; indeed, our function is to enforce those principles, " 'whatever be the words in which the [legislative] provision is expressed.' " (*People* v. *Webb, supra,* 38 Cal. at p. 479.)

The double jeopardy clause suffers no compromise; therein lies its strength and vitality. ▮ The extent of our inquiry ends with its proper application: "Whether guilty or innocent of the offense with which he [is charged, the defendant is] entitled to have his case fairly tried according to the established rules of law. As was said by a learned judge, 'Though unfair means may happen to result in doing justice to the prisoner in the particular case, yet justice so attained is unjust and dangerous to the whole community.' (*Hurd* v. *State,* 25 Mich. 405.) The doctrine that respect for the law cannot be inspired by withholding the protection of the law from those accused of crime is one which recognizes no exceptions. To be watchful for the constitutional and individual rights of the citizen against any encroachment thereon is one of the primary duties and obligations of the courts, and it is by unrelenting watchfulness and zeal in this regard that the conviction of the innocent will be averted." (*People* v. *Mendoza* (1942) 55 Cal.App.2d 625, 633 [131 P.2d 622]; cf. *People* v. *Superior Court (Harris)* (1990) 217 Cal.App.3d 1332 [266 Cal.Rptr. 563] [defendant may not be retried for death penalty after sentence of life without possibility of parole reversed].)

## V. DISPOSITION

The judgment of the Court of Appeal is reversed with directions to deny the People's petition for writ of mandate.

Lucas, C. J., Mosk, J., Panelli, J., Kennard, J., Baxter, J., and George, J., concurred.