Filed 5/2/2019

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>   Plaintiff and Respondent,<br><br>v.<br><br>RUBEN MATTHEW GONZALES,<br><br>   Defendant and Appellant. | 2d Crim. No. B289385<br>(Super. Ct. No. 2014021172)<br>(Ventura County) |

A person charged with crime may not stand trial if he is mentally incompetent.  Once defense counsel declares a doubt as to competence, it may not be withdrawn.  The issue can only be resolved upon a trial court finding of competence vel non.

Ruben Matthew Gonzales appeals his conviction by jury of first degree murder with personal use of a deadly weapon. (Count 1; Pen. Code, §§ 187, subd. (a), 189, 12022, subd. (b)(1).)[1]

---

[1] All further statutory references are to the Penal Code.

Before jury selection, appellant entered a guilty plea to four unrelated counts in a consolidated third amended felony information for assault with a deadly weapon (count 2; § 245, subd. (a)(1)), assault with force likely to produce great bodily

He was sentenced to state prison for an aggregate term of 33 years and eight months to life.

He contends that his due process rights were violated because the trial court failed to conduct a competency hearing after defense counsel declared a doubt as to appellant's competency and the proceedings were suspended pursuant to section 1368. We conditionally reverse the judgment of conviction and remand with directions to determine whether a retrospective competency hearing is feasible and, if so, to conduct a competency hearing. (*People v. Ary* (2011) 51 Cal.4th 510, 515, fn. 1 (*Ary*); *People v. Robinson* (2007) 151 Cal.App.4th 606, 619 (*Robinson*).)

*Facts*

On the morning of July 8, 2014, the victim, Emeterio Gonzalez (Tio) hosted a World Cup soccer game party at his apartment with Tracy Siquiedo (Tracy), Phillip Williams (Phillip), and Tio's nephew, Mario Gonzalez (Mario). Tio was 61 years old and disabled. He lived in an apartment complex for the elderly and disabled.

During the soccer game, Tracy and Phillip left to buy beer. When they returned, they saw appellant in Tio's apartment. Tio had met appellant a couple of weeks earlier. Tio said that he was a nice guy and "cool."

Appellant became angry and confrontational when Phillip touched appellant's backpack while cleaning. Phillip felt

---

injury (count 3; § 245, subd. (a)(4)), possession of a shank in jail (count 4; § 4502, subd. (a)), and possession of alcohol in jail (count 5; § 4573.8). Appellant admitted a prior prison term enhancement. (§ 667.5, subd. (b).)

2

uncomfortable and left the apartment at 9:00 a.m. A few minutes later, appellant told Tracy that they had to go buy Tio some food. As Tracy prepared to leave, appellant showed her a large knife under his shirt. Appellant went over to Tio who was lying on a bed and appeared to hug him. Instead he fatally stabbed Tio in the neck.

Tracy ran outside and called 911. In a recorded call, Tracy said she just saw a man she barely knew stab Tio with a knife. Tracy said the man was Hispanic, 28 to 29 years old, clean-shaven, and wearing a white T-shirt and long blue shorts.

After the police arrived, Tracy was shown a surveillance video and identified appellant leaving the apartment at 9:16 a.m. Appellant had changed clothing and then wore brown khaki pants, a dark sweatshirt, and sunglasses. Appellant used the stairs to avoid the other surveillance cameras.

Mario told the police that appellant was angry and aggressive. He saw appellant go into the bathroom. Then he saw appellant come out of the bathroom, quickly "scuffle" with Tio on the bed, and leave the apartment, trying to conceal a six to eight-inch knife under his clothing. Mario chased after appellant but returned when Tio screamed, "Nephew, help me!" Tio was holding his neck. There was blood on his collar. Mario, like Tracy, identified appellant in a six-pack photo line-up.

The murder weapon was never found but appellant's white T-shirt and blue shorts were found inside a purple bucket in Tio's apartment. Appellant's blood and DNA were on the clothes. Tio's blood was on the side of the bucket.

*Failure to Conduct Competency Hearing*

Appellant contends the trial court erred in not conducting a competency hearing after it suspended proceedings pursuant to

3

section 1368.  The day of the preliminary hearing, appellant's trial attorney declared a doubt as to appellant's competency pursuant to section 1368.  The trial court suspended the criminal proceedings, appointed a doctor to examine appellant and prepare a section 1368 report, and set the matter for a competency hearing.  The competency hearing was continued 14 times from October 16, 2014 to November 9, 2015.  The prosecution offered to stipulate to the contents of Doctor Ronald Thurston's report and waived jury trial.  Defense counsel, however, refused to agree and the competency hearing was continued to November 17, 2015 for jury trial.

On the day set for jury trial as to competency, appellant's trial attorney stated:  "Matter comes on in a status where criminal proceedings have been suspended after a doubt declared pursuant to 1368.  [¶]  That doubt was declared by Defense initially, and at this point in time, counsel has agreed that – with the Court's  permission – what I would like to do is withdraw that declaration of doubt and simply reinstate the criminal proceedings without prejudice to that being raised at any later date."

The trial court asked:  "You are just withdrawing that?  *I don't need to make a finding?*

Defense counsel responded "That's correct."  (Italics added.)[2]

---

[2] As we explain, this was erroneous advice.  Inexplicably, the prosecutor agreed.  The trial court's question shows that it, at least, recognized that there might be a problem.  This should have been a time for pause, reflection, a recess and research.

4

After the prosecutor agreed to the procedure, the trial court ordered that "[c]riminal proceedings are now reinstated." The case proceeded to preliminary hearing and then jury trial.

Appellant correctly contends that the trial court was without jurisdiction to proceed to trial without first finding that appellant was competent to stand trial. (See *People v. Pennington* (1967) 66 Cal.2d 508, 521.) This is so because the trial court's "authority is constitutionally and statutorily restricted to holding a competency hearing before proceeding with any other matters. When the court fails to discharge this obligation, the resultant denial of due process is 'so fundamental and persuasive that [it] require[s] reversal without regard to the facts or circumstances of the particular case. [Citations.]' [Citations.]" (*People v. Superior Court* (*Marks*) (1991) 1 Cal.4th 56, 70.)

Section 1368 provides in pertinent part: "If during the pendency of an action and prior to judgment, . . . *a doubt arises in the mind of the judge as to the mental competence of the defendant, he or she shall state that doubt in the record* and inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent. . . . [¶] If counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369. . . . [¶] Except as provided in Section 1368.1, when an order for a hearing into the present mental competence of the defendant has been issued, all proceedings in the criminal prosecution shall be suspended until the question of the present

5

mental competence of the defendant has been determined." (Italics added.)

Relying on *People v. Johnson* (1991) 235 Cal.App.3d 1157 (*Johnson*), the respondent argues that the trial court never expressed a doubt as to appellant's competency. In *Johnson*, the trial court granted defense counsel's section 1368 request, suspended proceedings, and appointed two doctors to examine defendant. (*Id.* at p. 1160.) After the doctors reported that defendant was competent to stand trial, the trial court granted counsel's motion to withdraw the section 1368 request. Defendant entered a change of plea and was sentenced to state prison. (*Id.* at pp. 1160-1161.) On appeal, the *Johnson* court rejected the argument that the trial court lacked jurisdiction to sentence defendant. "At no time in these proceedings did the trial court ever express doubt about defendant's competency; nor was there any evidence presented that defendant was incompetent. Thus the trial court did not abuse its discretion in granting defendant's motion to withdraw her request for a competency hearing. [Citation.]" (*Id.* at p. 1166.)

Here, the trial court did not expressly declare a doubt about appellant's competency. But it impliedly did so by suspending the criminal proceedings. When it set the matter for a section 1368 competency hearing, the prosecutor asked about a time waiver for the preliminary hearing. The trial court responded that no time waiver was required because "we suspended the proceedings when a doubt was declared."

The initial order setting a competency hearing was followed by 14 continuances of the hearing. This is tantamount to a finding that the trial court declared a doubt as to appellant's competency. *Johnson* is distinguishable because, in that case,

6

defense counsel never represented to the court that defendant may be incompetent and the trial court "consistently declined to set a formal hearing on competency until further evidence was presented . . . ." (*Johnson, supra*, 235 Cal.App.3d at p. 1166.)

In *People v. Marks* (1988) 45 Cal.3d 1335 (*Marks*) our Supreme Court held that a competency hearing must be conducted when the trial court relies on defense counsel's representation that there is a doubt as to defendant's competency. (*Id*. at p. 1344.) Respondent argues that the trial court merely acceded to defense counsel's request to suspend the proceedings. But that would elevate form over substance where the trial court orders a competency hearing, continues the competency hearing more than ten times, and sets the competency hearing for jury trial. Respondent's "argument, if followed, would require us to 'second guess' the trial court's finding that a [competency] hearing was required. Such result would be contrary to our holding in *Hale* [*People v. Hale* (1988) 44 Cal.3d 531 (*Hale*)] that, once the hearing was ordered, it ha[s] to be held. We again conclude, as we recently did in *Hale*, that, 'The sub silentio disposition of the section 1368 proceedings without a full competency hearing rendered the subsequent trial proceedings void because the court had been divested of jurisdiction to proceed pending *express* determination of the competency issue.' [Citation.]" (*Marks, supra*, at p. 1344.)

*Retrospective Competency Hearing*

We follow *Marks and Hale*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) "[O]nce a doubt has arisen as to the competence of the defendant to stand trial, the trial court has no jurisdiction to proceed with the case against the defendant without first determining his competence in a section

7

1368 hearing, *and the matter cannot be waived by defendant or his counsel.* [Citations.]" (*Hale, supra*, 44 Cal.3d at p. 541, italics added.) This is known as *Pate* error (*Pate v. Robinson* (1966) 383 U.S. 375) and is a due process violation where the trial court orders a competency hearing but never determines defendant's competency to stand trial. (See *People v. Rodas* (2018) 6 Cal.5th 219, 238 (*Rodas*).) The fair import of *Hale, supra*, that neither the defendant nor his counsel may withdraw a previously expressed doubt is clear and forms the basis of our holding: A person charged with crime may not stand trial if he is mentally incompetent. Once defense counsel declares a doubt as to competence, it may not be withdrawn. The issue can only be resolved upon a trial court finding of competence vel non.

Remanding the case to determine whether appellant was competent to stand trial (i.e., a retrospective competency hearing) is appropriate "in cases involving unusual circumstances where reliable evidence of the defendant's mental condition at the time of trial would be available at the hearing. [Citations.]" (*Rodas, supra*, 6 Cal.5th at p. 241, citing *People v. Ary* (2004) 118 Cal.App.4th 1016, 1028 (*Ary I*); see *Drope v. Missouri* (1975) 420 U.S. 162, 182-183 [accepting possibility of constitutionally adequate postappeal evaluation of defendant's pretrial competence]; *People v. Superior Court* (*Marks*), *supra*, 1 Cal.4th at p. 67 [citing reference in *Drope v. Missouri* about possibility of constitutionally adequate postappeal competency evaluation].)

"'Four factors are considered in assessing whether a meaningful retrospective competency determination can be made consistent with a defendant's due process rights: "(1) The passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency

determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial.'" [Citation.]" (*Robinson, supra*, 151 Cal.App.4th at pp. 617-618.)

These factors weigh in favor of a retrospective competency hearing. After Dr. Thurston examined appellant and reported that appellant was competent to stand trial, defense counsel withdrew the section 1368 request. Appellant later addressed the trial court at an in-camera *Marsden* hearing (*People v. Marsden* (1970) 2 Cal.3d 118) and, on the first day of trial, entered a change of plea to the assault, weapon and alcohol charges (counts 2-5). Before sentencing, the probation department reported that appellant had accumulated 101 pages of disciplinary reports in jail for "causing disturbances, contraband, hoarding medicine, possession of 'rat-lines,' unauthorized communications, failure to obey directives, possession of 'pruno,' tampering with and destruction of County property, battery of an inmate, security tampering, disrespecting staff, refusal to 'lock-down,' and deception." Dr. Thurston's report, counsel's statements, and appellant's statements and conduct are relevant in determining whether a retrospective competency hearing is feasible. (See, e.g., Cal. Rules of Court, rule 4.130, subd. (d)(2)(F); *Medina v. California* (1992) 505 U.S. 437, 450 ["defense counsel will often have the best-informed view of defendant's ability to participate in his defense"]; *People v. Lewis* (2008) 43 Cal.4th 415, 525 [counsel's declarations entitled to some weight, though not determinative], disapproved on another point in *People v. Black* (2014) 58 Cal.4th 912, 919-920; *People v. Rogers* (2006) 39 Cal.4th 826, 847 [defendant's

demeanor, irrational behavior, and prior mental evaluations may be circumstantial evidence of incompetence].)

Because this appears to be a case in which a retrospective competency hearing could be held, we remand to the trial court with directions, as detailed in the disposition.

*Medical Examiner's Autopsy Testimony*

Dr. Jon Smith conducted the autopsy of Tio and prepared an autopsy report but no longer worked for the Ventura County Medical Examiner's Office at time of trial. Relying on photographs, documents, and the autopsy report, Ventura County Assistant Chief Medical Examiner Dr. Othon Mena, opined that the manner of death was homicide and caused by a stab wound to the neck with a knife. Appellant argues that the trial court erred in overruling his *Sanchez* objection (*People v. Sanchez* (2016) 63 Cal.4th 665) with respect to Dr. Mena's testimony about the victim's height and weight, and the depth of the knife wound, as reported in the autopsy report. An expert witness, however, may "*rely* on hearsay in forming an opinion, and may tell the jury *in general terms* that he did so." (*Sanchez*, at p. 685.) "[S]tatements describing the pathologist's anatomical and physiological observations about the condition of the body" are not testimonial in nature because they "merely record objective facts [and] are less formal than statements setting forth a pathologist's expert conclusions." (*People v. Dungo* (2012) 55 Cal.4th 608, 619 [pathologist relied on report of a nontestifying pathologist to describe hemorrhages in the victim's eyes and neck, and the absence of any natural cause of death].)

Relying on *People v. Perez* (2018) 4 Cal.5th 421, appellant argues that Dr. Mena's description of the victim's wounds and postmortem condition, taken directly from Dr. Smith's autopsy

report, is case-specific testimonial hearsay and violates the confrontation clause.  The *Perez* court held:  "While [the testifying pathologist] relied on hearsay forming his opinion, he is permitted to do so under *Sanchez* and Evidence Code section 802.  [Citation.]  The jury would have thus heard [his] opinion about the cause of death even if the trial court had denied admission of the challenged hearsay statements.  So we conclude that any error was harmless beyond a reasonable doubt."  (*Id*. at p. 457.)

Appellant argues that his right to confrontation was violated because the prosecution told the jury that the depth of the knife wound was strong evidence of premeditation and deliberation.  The depth of the knife wound was documented by the autopsy photos which showed metal probes inside the wound.  But the "admission of autopsy *photographs*, and competent testimony based on such photographs, does not violate the confrontation clause."  (*People v. Leon* (2015) 61 Cal.4th 569, 603 (*Leon*); accord, *People v. Garton* (2018) 4 Cal.5th 485, 506 [pathologist's testimony premised explicitly on photographs and X-rays do not constitute hearsay].)

*Exclusion of Defense Witness Testimony*

Appellant's claims that his due process right to present a defense was violated because the trial court excluded the testimony of Joseph Siquido, Tracy's brother.  At an Evidence Code section 402 hearing, Joseph stated that Tracy had the mind of a 10-year old child and had been in and out of the Hillmont Psychiatric facility.  Joseph "believed" that Tracy was an alcoholic, used methamphetamine and might be bipolar or delusional.

The trial court found that "everything [the] witness [Joseph] said, in my opinion, is speculation. . . .  [¶]  I don't find

11

anything he said credible and certainly not relevant and not admissible, because it lacks foundation of personal knowledge. . . . [¶] That does not mean that you don't have the right to call a witness to question the truthfulness or veracity of [Tracy] or provide evidence . . . concerning her credibility . . . or her honesty as a witness."

It is settled that the exclusion of irrelevant evidence does not violate the confrontation clause or impair an accused's due process right to present a defense. (*United States v. Scheffer* (1998) 523 U.S. 303, 308; *People v. Fudge* (1994) 7 Cal.4th 1075, 1102-1103; *People v. Jennings* (1991) 53 Cal.3d 334, 372 [confrontation clause not implicated where excluded evidence has slight relevance].) Appellant argues that the Joseph's testimony was relevant to show Tracy's inability to perceive, recall, or describe what happened. Tracy's preliminary hearing testimony[3] was corroborated by Mario who witnessed the stabbing, by Tracy's 911 call, by Tracy's statements to the police, and by the surveillance video of appellant leaving the apartment in disguise. Joseph had no personal knowledge that Tracy lacked the capacity to perceive and accurately recount what she saw on the day of the homicide.

### Disposition

The judgment is conditionally reversed and remanded to the trial court with directions to decide whether a retrospective competency hearing should be held to determine whether appellant was competent to stand trial in January 2018. (*Ary, supra,* 51 Cal.4th at p. 515, fn. 1; *People v. Lightsey* (2012) 54 Cal.4th 668, 710.) "Because of the inherent difficulties in

---

[3] Tracy died before trial. Her preliminary hearing testimony was videotaped and played for the jury.

12

attempting to look back to [appellant's] past mental state [citation], the burden of persuasion will be on the People to convince the trial court by a preponderance of the evidence that a retrospective competency hearing is feasible in this case. [Citations.]" (*Id.* at pp. 710-711.)

If the trial court finds that the prosecution has failed to carry its burden of proving that a retrospective competency hearing is feasible, a new trial shall be granted and appellant may bring a motion to withdraw his plea on the assault, weapon, and alcohol counts (counts 2-5). (*People v. Kaplan* (2007) 149 Cal.App.4th 372, 390.) If the trial court decides that a retrospective competency hearing is feasible and should be held, appellant has the burden of proving, by a preponderance of the evidence, that he was mentally incompetent to stand trial in January 2018. (§ 1369, subd. (f); Cal. Rules of Court, rule 4.130, subd. (e)(2); *Ary*, *supra*, 51 Cal.4th at pp. 520-521.) Appellant must show "as a result of mental disorder or developmental disability, [he was] unable to understand the nature of the criminal proceedings or to assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a).)

If appellant is found to have been competent to stand trial in January 2018, the trial court shall reinstate the judgment.

CERTIFIED FOR PUBLICATION.

YEGAN, Acting P. J.

We concur:

PERREN, J.

TANGEMAN, J.

13

Jeffrey G. Bennett and Ryan Wright, Judges

Superior Court County of Ventura

_____


Mark D. Lenenberg, under appointment by the Court of Appeal for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Ryan M. Smith, Deputy Attorney General, for Plaintiff and Respondent.