Filed 1/5/21  P. v. Williams CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>  v.<br><br>KEVIN LEE WILLIAMS,<br><br>     Defendant and Appellant. | C088696<br><br>(Super. Ct. Nos. 18CF01285,<br>18CF03357) |

A jury found defendant Kevin Lee Williams guilty of possessing methamphetamine and marijuana in jail, as well as providing false identification to an officer.  He was sentenced to an 11-year aggregate prison term.

On appeal, defendant contends (1) the trial court erred in finding him mentally competent to stand trial, despite the examining psychologist finding him incompetent based on his inability to assist counsel in his defense and recommending a psychiatric evaluation for possible antipsychotic medication; (2) he did not violate Penal Code

1

section 4573.6[1] by bringing marijuana into a jail; and (3) his prior prison term enhancements must be stricken, in light of Senate Bill No. 136 (Stats. 2019, ch. 590, § 1) (SB 136).

We agree as to each contention.  We reverse the marijuana conviction and strike the prior prison term enhancements.  We conditionally reverse the methamphetamine and providing false identification convictions and remand for a retrospective competency hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

An officer found defendant lying on the sidewalk, in a fetal position.  The officer woke defendant and asked his name.  Defendant answered, "Mike Williams."  When the officer asked his date of birth, defendant said he was 44.  Asked if he was on probation or parole, defendant said, "neither."

The officer radioed dispatch; no match could be found for the information provided.

The officer again asked defendant's name.  This time defendant gave his true name, "Kevin Williams," and when asked his date of birth, he said December 15, 1974.  He again denied being on probation or parole.

Dispatch was then able to identify defendant, but under a different date of birth.  Dispatch also confirmed defendant was on parole.  Defendant was arrested for providing a false name.

A responding officer searched defendant incident to the arrest and found nothing.  When she placed him in a patrol car, she asked if he had any illegal items on him not found in the search.  Defendant did not respond.  The officer warned defendant that

---

[1] Undesignated statutory references are to the Penal Code.

2

bringing drugs into a secured facility would lead to a felony charge. Defendant said nothing, but shook his head left to right.

During the jail booking process, a small bag of methamphetamine was discovered on defendant. Two days later, defendant was strip-searched and 1.1 grams of marijuana was discovered. When asked by a jail deputy if he wanted to speak about the marijuana, defendant said it wasn't his fault the marijuana wasn't found during the initial search.

A jury found defendant guilty of possessing methamphetamine in jail (§ 4573.6, subd. (a)); giving false identification to an officer (§ 148.9, subd. (a)); and possessing marijuana in jail (§ 4573.6, subd. (a)). The jury separately found defendant had suffered five prior prison terms (§ 667.5, subd. (b)).

The trial court imposed an 11-year aggregate term, consisting of the four-year upper term for possessing methamphetamine in jail, one year (one-third the middle term) for possessing marijuana in jail, and six one-year prior prison term enhancements. A six-month term for giving a false identification was imposed to run concurrently.

## DISCUSSION

### I. The Competency Finding

Defendant contends the trial court abused its discretion and violated his due process rights, when it found him mentally competent to stand trial, despite the examining psychologist finding him unable to assist counsel with his defense. The People respond that substantial evidence supports the trial court's competency finding. We agree with defendant.

### A. Additional Background

A defendant is mentally incompetent to stand trial if either of the two "*Dusky*" prongs are satisfied: (1) he is unable to "understand the nature of the criminal proceedings" or (2) he is unable to "assist counsel in the conduct of a defense in a rational manner." (§ 1367, subd. (a); *Dusky v. U.S.* (1960) 362 U.S. 402 [4 L.Ed.2d 824] (*Dusky*); *People v. Buenrostro* (2018) 6 Cal.5th 367, 387 (*Buenrostro*).)

3

Here, a doubt was declared as to defendant's competence three times during the pendency of his case. Each time, a new psychologist was appointed to evaluate him, with the same judge presiding throughout. The first two psychologists found defendant competent as to both prongs. The third psychologist found, in a "close call," defendant incompetent based on his inability to assist counsel in the conduct of his defense in a rational manner.

**1. The First Report, Hearing and Ruling**

Before trial, defense counsel declared a doubt, and the trial court appointed a psychologist to evaluate defendant. The psychologist's report, filed May 5, 2018, concluded defendant could understand the nature and purpose of the charges, and had sufficient mental capacity to consult with his attorney and assist rationally. It described defendant as "friendly and candid," and reported that when asked why he thought his competency was in question, defendant admitted he had been belligerent in court.

Within the report, however, was a hint of a more serious disorder. At one point it noted, "the file suggested schizophrenia," but also, "[i]f there is a more sinister disorder (the file suggests this) it was not evident in the evaluation with the undersigned." The report went on to say, "[t]he defendant claimed that the psychotic diagnosis may have been drug related, and the jail file supported that possibility."

The report also contained a diagnosis of stimulant abuse, stimulant induced psychotic disorder and stated that his "symptoms resolved with sobriety." The report concluded, "[s]obriety is indicated as a route of recovery for this defendant; his psychosis appeared to be drug induced," adding that treatment with antipsychotic medication was neither medically appropriate nor in defendant's best interest. (Bold omitted.)

At the following hearing, the parties submitted on the report, and the trial court adopted the findings and reinstated proceedings.

## 2. The Second Report, Hearing and Ruling

A month later, the trial court granted defendant's *Faretta*[2] motion to represent himself. Two months after that, the trial court revoked the grant and declared a doubt as to defendant: "I frankly . . . [am] entertaining a doubt under Penal Code Section 1368, and I'm finding that on your decorum you can no longer represent yourself." The court appointed a second psychologist to evaluate defendant.

The second psychologist's report, filed on August 15, 2018, also concluded defendant was mentally competent to stand trial. Doing so, it noted defendant "may be a more difficult client for his attorney due to his talkative, expansive, and animated manner, and tendency to try to extol his perceived legal knowledge and opinions."

The report, however, reflected that defendant's "parole agent noted a major problematic area of concern is [defendant's] mental health instability." According to the parole agent, defendant had been "hospitalized on several occasions for displaying paranoid schizophrenic behavior," and defendant had previously received psychotropic medication.

The report also quoted a jail deputy who told the psychologist: "When [defendant is] on meds, he's normal. When he is off, you can't talk to him. He attacked another inmate and said he thought the inmate was ISIS." Consistent with that, the report stated that while defendant was in prison, he was diagnosed with schizophrenia and he was prescribed medication. Defendant admitted he had previously taken antipsychotic medication, though he had refused to take medications prescribed for him at the jail. He had also refused to take medications while on parole.

---

[2] *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562] (*Faretta*).

5

The report stated that defendant met the diagnostic criteria for schizoaffective, bipolar type, in full remission, but substance-induced psychotic disorder was another possibility.

As to defendant's ability to consult with counsel, defendant was assessed with the Evaluation of Competency to Stand Trial-Revised exam (ECST-R).[3] That exam found "moderate impairment" in his ability to consult with counsel, though, "this level of impairment is typically associated with competent defendants." The report went on to say, "[a]lthough he may be insistent in asserting his own legal opinions, there was no evidence of impaired ability to agree/disagree/settle disagreements with his attorney, should he choose to do so." It concluded, defendant "has adequate factual and rational ability . . . to consult with counsel, if he chooses to do so."

The report also noted defendant was not taking medication, and "[s]ince [defendant] is currently not exhibiting any significant disruptive psychotic symptoms, treatment with antipsychotic medication is not presently necessary."[4] However, it went on to say: "[s]hould he have a relapse of psychotic and mood symptoms during the adjudication process, he would likely benefit from treatment with appropriate antipsychotic and mood stabilizing medications to restore his mental competence." But "[a]s long as his psychotic and mood symptoms remain in remission and he continues to be mentally competent, treatment with antipsychotic medication is not necessary."

At the following hearing, the parties submitted on the report, and the trial court again found defendant competent and reinstated proceedings.

---

[3] The ECST-R was described in the report as a "semistructured interview designed to assess the dimensions of competency to stand trial as outlined in *Dusky*."

[4] The report noted defendant had been diagnosed with schizophrenia in prison, and was prescribed Neurontin, which is "sometimes prescribed for anxiety for Bipolar Disorder." Defendant reported his only schizophrenia symptom was auditory hallucinations, which he had not experience in the past four to five years.

### 3.  The Third Report, Hearing and Ruling

A month later, at a *Marsden*[5] hearing, defense counsel told the court "I have a client who, from my view, very clearly . . . has some very significant mental-health issues and/or defects that prevent me from being able to communicate with him and discuss his case in any type of rational manner or prepare a defense, because he insists on discussing things like robots that take blood."  He added:  "I would say it's impossible to communicate with [defendant]."

Counsel declared a doubt again:  "He may understand the nature of the charges against him, but I don't believe he's able to rationally communicate."  The trial court appointed a third psychologist to evaluate defendant.

The third psychologist's report was filed on October 10, 2018.  Like the first two, it found defendant competent as to the first prong.  But as to the second, it did not.  To that prong, the report explained defendant showed "moderate impairment," on the ECST-R, adding:  "[i]n perspective, [defendant] scored just a few points above the threshold for impairment, so in my opinion this score is somewhat borderline.  Clearly some concern exists with regard to his ability and/or willingness to participate with his attorney . . . ."  The report also noted that "many if not most defendants" scoring in the moderate range on that assessment are found competent.

The report, nevertheless, concluded:  "[t]he available information on this matter represents 'a close call' with regard to [defendant's] ability to cooperate with his attorney.  From what I could tell based on his self-report, I believe there is more data supporting a conclusion that he is experiencing notable obstacles in cooperating with his attorney, and that a good portion of the reason he is experiencing these obstacles are his

---

[5]  *People v. Marsden* (1970) 2 Cal.3d 118, 122.

7

delusional beliefs rather than simply the rigid and externalizing frame of reference of personality disorder dynamics."

The report noted that during the interview, defendant spoke of having been prescribed antipsychotic medications in the past and having been diagnosed with schizophrenia when he was in prison. And during the interview, defendant "shared belief systems of some delusional content." He was guarded and evasive when asked about the delusions his attorney had reported, "a robot taking blood" and ISIS in the jail. The report noted that schizophrenic patients who are experienced in working with mental health and legal professionals learn to be evasive to avoid hospitalization or other adverse consequences.

The report concluded the "best-fit diagnosis" was Unspecified Schizophrenia Spectrum or other Psychotic Disorder.

Under the heading, "*The defendant's ability to understand the criminal proceedings or to assist counsel in a rational manner*," the report stated: "Given [defendant's] reported [*sic*] he has not taken any of his antipsychotic medication for one and a half to two years, it may be he will be able to cooperate more effectively if receiving this treatment at the Butte County Jail. At this time, it is my opinion that [defendant] is experiencing difficulty in cooperating with his counsel *to the extent that I do not believe he is competent relative to prong two of the Dusky standard*. However, I respectfully suggest that [defendant] participate in a medication evaluation in the jail and *be medication compliant* as *this may help him with his cooperation abilities*." (Second and third Italics added.)

Under the heading, "*Is treatment with antipsychotic medication medically appropriate for the defendant*," the report stated: "Yes. I would recommend [defendant] be evaluated by the psychiatrist at the jail, that the consulting psychiatrist be provided not only with a copy of my report but the reports of [the first two psychologists], and perhaps

8

allow access of the consulting psychiatrist to the prison records where [defendant] was diagnosed with schizophrenia."

The report concluded: "In my opinion antipsychotic medication is in [defendant's] best interests."

At a subsequent hearing, defense counsel told the court: "I've had a chance to review [the third psychologist's report]. He does consider this a close call. I maintain some concerns, but I'm prepared to submit it on the report, Your Honor."

The court inquired: "As a finding that [defendant] is competent?" [¶] "That's how I read it," counsel replied. When asked for comment, the prosecutor said, "Submitted." The court then stated: "So the Court will receive into evidence a report authored by [the third psychologist] received on October 10, 2018, by the Court. *Based thereon*, the Court is going to find that [defendant] is competent within the meaning of [section] 1368 *with the cautions described there* by [the third psychologist], and that would have the criminal proceedings reinstated." (Italics added.)

**4. Defendant's Trial Conduct**

During jury selection, as the prospective jurors entered the courtroom, defendant had what the trial court characterized as "an outburst," and the trial court warned him to contain himself and follow the court's instruction or he would be removed. Later, during cross-examination of a prosecution witness, defendant blurted out: "Could I ask the question quickly without lying?" When the court admonished defendant that they needed to hear from his attorney, defendant replied, "But he don't understand English." The court then asked defendant to maintain his composure.

On another occasion after the jury left the courtroom, the court admonished defendant that he should keep his voice down when consulting with trial counsel. The court told defendant "you are talking loudly enough and urgently in a way that draws attention to your conversations."

9

Later in the trial, defendant took the stand to testify. But he did not answer counsel's questions, prompting counsel to say, outside the jury's presence, "I'm asking for any guidance the Court has to offer at this point." The court ultimately allowed defendant to testify in a narrative form. But once the jurors returned to the courtroom, and the court explained that defendant would testify in the narrative, defendant shook his head "no" when asked if he would like to go forward with his testimony. The court then concluded defendant's testimony. Outside of the jury's presence, the court later explained for the record that as the jury came in, defendant stood in the witness stand, prompting the deputies to tell him to sit. When he did not, the deputies "had to assist him to the chair."

During defense counsel's closing argument, defendant interrupted and engaged in a tirade, prompting the trial court to warn him, he would be removed if he didn't stop. And after counsel concluded his closing argument, defendant blurted out: "Can you request not to say all the counts." When the trial court tried to interrupt, defendant said, "I don't care. It's an executive order. You guys are tricking the people," and, "I'm not even in this jurisdiction."

And following sentencing, the trial court stated: "The court record should reflect [defendant] has left the courtroom. Throughout the entire proceedings [defendant] did not stop talking and he occasionally had profanity and he was subject to outbursts. And so the Court directed the court reporter to take down Court and counsel and not to capture [defendant's] comments."

## B. Analysis

### 1. Due Process

"As a matter of due process, '[a] defendant may not be put to trial unless he " 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him.' " ' " (*Buenrostro, supra,* 6 Cal.5th at p. 386.) To that end, "[a] trial court's

10

failure 'to employ procedures to protect against trial of an incompetent defendant deprives him of his due process right to a fair trial and requires reversal of his conviction.' " (*Ibid*.)  Concomitantly, a court must " 'conduct a full competency hearing if substantial evidence raises a reasonable doubt that a criminal defendant may be incompetent.' " (*Id*. at p. 387.)  And even if a defendant is competent at the trial's commencement, " ' "a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." ' " (*Id*. at p. 386.)

The procedure for a mental competency determination is set out in section 1369.[6] The trial court appoints a psychiatrist or psychologist to examine the defendant.  (§ 1369, subd. (a).)  The appointed expert then evaluates the defendant's mental disorder (if any), his ability to understand the nature of the proceedings, and his ability to rationally assist counsel in the conduct of a defense.

The examining expert must also determine, "if within the scope of their licenses and appropriate to their opinions, whether or not treatment with antipsychotic medication is medically appropriate for the defendant and whether antipsychotic medication is likely to restore the defendant to mental competence."  (§ 1369, subd. (a)(2).)

Rule of Court, rule 4.130, subdivision (d)(2)(E) similarly provides that the examining expert's report include "a statement on whether treatment with antipsychotic or other medication is medically appropriate for the defendant . . . ."  And if an examining psychologist opines that referral to a psychiatrist is necessary to address matters related to the medication issue, "the psychologist must inform the court of this

---

[6] We cite to the version of section 1369 in effect at the time of the hearings.  Though an amendment to the statute took effect in 2019, the changes are not material to this appeal. (Stats. 2018, ch. 1008 (Senate Bill No. 1187), § 1, eff. Jan. 1, 2019.)

opinion and his or her recommendation that a psychiatrist should examine the defendant."**7**

After the evaluation, the defense and prosecution have an opportunity to offer evidence and to present their case. (§ 1369, subd. (b)-(e).) The matter is then decided by jury or the court. (§ 1369; Rule 4.130, subd. (e).) The rules of court further direct: "After the presentation of evidence and closing argument, the trier of fact is to determine whether the defendant is mentally competent or mentally incompetent" and "[i]f the parties have waived the right to a jury trial, the court's findings must be made in writing or placed orally in the record." (Rule 4.130, subd. (e)(4)(B).)

Here, we cannot conclude that defendant was afforded his due process rights. The People — citing the purportedly tenuous nature of the third report, the two previous competency findings, and the trial court's observation of defendant's behavior over several months — maintain that substantial and credible evidence supports the trial court's competency finding. While we agree that a trial court is not obligated to accept an expert's opinion of incompetency (*In re R.V.* (2015) 61 Cal.4th 181, 215), we cannot conclude on this record that the trial court reasonably rejected the third expert's finding — if indeed it did so.

---

**7** Rule of Court Rule 4.130, subdivision (d)(2)(E) provides that an expert's report include: "[A] statement on whether treatment with antipsychotic or other medication is medically appropriate for the defendant, *whether the treatment is likely to restore the defendant to mental competence*, a list of likely or potential side effects of the medication, the expected efficacy of the medication, possible alternative treatments, whether it is medically appropriate to administer antipsychotic or other medication in the county jail, and whether the defendant has capacity to make decisions regarding antipsychotic or other medication. *If an examining psychologist is of the opinion that a referral to a psychiatrist is necessary to address these issues, the psychologist must inform the court of this opinion and his or her recommendation that a psychiatrist should examine the defendant.*" (Italics added.)

First, contrary to the People's argument, the court did not state that it considered its observations of defendant's behavior in finding defendant competent at the third hearing. Second, contrary to the People's argument that the first two competency findings should factor into our review, the trial court did not receive the first two reports into evidence, and the record does not reflect that it considered those reports or the first two findings it made when ruling at the third hearing. Rather, the court expressly stated that its decision was based only on the third report "with the cautions described there" by the third psychologist. Although the trial court stated it relied upon "cautions described" in the third psychologist's report, there is no indication what the trial court meant by that, and we can find no indication in the court's findings that it actually considered the third report's ultimate conclusion that defendant was incompetent. As we have noted, the trial court was required to state its competency "findings" orally for the record or put those findings in writing. (Rule 4.130, subd. (e)(4)(B).) The People's arguments concerning competency are simply not supported by the trial court's oral findings.

We also note that the parties do not dispute that defense counsel misread the third psychologist's findings as a finding of competence. In our view, nothing in the record suggests the trial court was not operating under the same mistake. By all indications, the trial court read the third psychologist's report as yet another finding of competence. Consequently, we cannot see either how defendant was afforded due process, or how a rejection of the expert's conclusion could be upheld, where it does not appear the trial court was aware it was rejecting the third psychologist's incompetency opinion.

Moreover, assuming the trial court had knowingly rejected the third psychologist's opinion, there is scant evidence to support doing so. (*People v. Blacksher* (2011) 52 Cal.4th 769, 797 [a finding of competency is reviewed for substantial evidence]; *People v. Marshall* (1997) 15 Cal.4th 1, 31 [evidence is substantial if it is reasonable, credible, and of solid value].) The third psychologist opined that defendant was incompetent, stating under the heading, "*The defendant's ability to understand the criminal*

13

*proceedings or to assist counsel in a rational manner*": "At this time, it is my opinion that [defendant] is experiencing difficulty in cooperating with his counsel to the extent that *I do not believe he is competent relative to prong two of the Dusky standard*." (Second italics added.) The psychologist also concluded the "best-fit diagnosis" was unspecified schizophrenia spectrum or other psychotic disorder, and recommended, "[defendant] participate in a medication evaluation in the jail and *be medication compliant as this may help him with his cooperation abilities*." (Italics added.) That recommendation was consistent with the second psychologist's report, which stated, "[s]hould [defendant] have a relapse of psychotic and mood symptoms during the adjudication process, he would likely benefit from treatment with appropriate antipsychotic and mood stabilizing medications to restore his mental competence." Bolstering that recommendation was a parole agent's statement reflected in the second report that defendant had been "hospitalized on several occasions for displaying paranoid schizophrenic behavior" and had received psychotropic medication. A jail deputy similarly, noted: "When [defendant's] on meds, he's normal. When he is off, you can't talk to him."

Against that, there was little the trial court could rely upon to conclude defendant was nonetheless competent. Indeed, even if the first two evaluations could be considered as part of the substantial evidence supporting the trial court's ruling at the third hearing, the third evaluation and defendant's behavior at the time of the third evaluation did not suggest ability to rationally assist his counsel — nor did his subsequent behavior during trial, for that matter.

We also think it relevant that the trial court apparently overlooked the third psychologist's medication recommendation. On that point, we asked the parties to address whether the trial court was required to consider that recommendation, whether it was required to do so on the record, and whether a failure to do so violated defendant's due process rights. Defendant responded yes to each question. The People, however,

14

agreed only that the trial court must consider the recommendation. The People maintain the trial court did in fact consider the recommendation, and nothing obligates the court to do so on the record. And because nothing indicates the trial court did not consider the recommendation, no violation of due process occurred.

While we agree no statute, rule, or case obligates the trial court to expressly state that it has considered medication recommendations on the record,[8] we cannot agree defendant was afforded due process when the court found him competent. The second psychologist's warning that defendant would benefit from antipsychotic and mood stabilizing medications to restore his mental competence "[s]hould [defendant] have a relapse of psychotic and mood symptoms during the adjudication process" and the third psychologist's recommendation for antipsychotic medication should have raised red flags and alerted the trial court to defendant's capacity challenges relative to the second *Dusky* prong before the trial. So too should have defendant's trial conduct. Indeed, as we have noted, even if a defendant is competent at the trial's commencement, " ' "a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." ' " (*Buenrostro, supra,* 6 Cal.5th at p. 386.) On this record, it appears the trial court failed to do so here despite the medication recommendations, the third psychologist's opinion as to the second *Dusky* prong and defendant's trial behavior.

We therefore conclude defendant was deprived of his due process right to a fair trial, as the trial court failed "to employ procedures to protect against trial of an

---

[8] The Rules of Court require only that the *competency findings* be made in writing or placed orally on the record. (Rule 4.130, subd. (e)(4)(B).) Although no statute, rule or case compels an express ruling from the trial court indicating that it considered the medication recommendations and setting forth the reasons for declining to follow the recommendation, such an on-the-record statement obviously facilitates appellate review. It is difficult to afford deference to the trial court when there are no express rulings or statement in the record to give deference to.

incompetent defendant . . . ." (See *Buenrostro, supra,* 6 Cal.5th at p. 386.) This violation requires reversal.

## 2. Conditional Remand

Having found error, we turn to whether remand for a retrospective competency hearing is appropriate. Such a hearing — to determine whether the defendant was in fact competent to stand trial — "is appropriate 'in cases involving unusual circumstances where reliable evidence of the defendant's mental condition at the time of trial would be available at the hearing.'" (*People v. Gonzales* (2019) 34 Cal.App.5th 1081, 1088 (*Gonzales*).) " 'Four factors are considered in assessing whether a meaningful retrospective competency determination can be made consistent with a defendant's due process rights: "(1) The passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with defendant before and during trial." ' " (*People v. Robinson* (2007) 151 Cal.App.4th 606, 617 (*Robinson*).) A court may also consider "any other facts the court deems relevant." (*People v. Lightsey* (2012) 54 Cal.4th 668, 710 (*Lightsey*).)

Still, a meaningful retrospective competency determination may rarely be possible. (*Robinson, supra*, 151 Cal.App.4th at p. 617.) Seldom is there sufficient evidence of a defendant's mental state during trial to base a subsequent competency determination. (*Ibid.*) Accordingly, retrospective hearings are permitted only where reliable evidence of the defendant's mental condition during trial would be available at the hearing. (*People v. Rodas* (2018) 6 Cal.5th 219, 241.)

We asked the parties if this was such a case. Defendant responded, no. He notes the third psychologist found him incompetent and no contemporaneous evidence points to the contrary. He notes that this is not a case where the trial court failed to hold a

competency hearing. And he avers his behavior at trial indicates he was not competent to stand trial.

The People respond that a retrospective competency hearing is feasible because trial took place in November 2018, three experts evaluated him near that time, defendant testified at trial and made statements, and nothing indicates witnesses and experts are no longer available.

We agree with the People that those factors tip the scale in favor of feasibility, at least at this point. We are also mindful that other factors (including that defendant was never evaluated by a psychiatrist) could make it difficult, perhaps impossible, to determine retrospective competency. We therefore conclude it is appropriate to remand with directions for the trial court to determine whether a retrospective competency hearing is feasible, and if so, to hold that hearing. (See *Lightsey, supra,* 54 Cal.4th at p. 710 [remanding for trial court to determine if retrospective competency hearing should be held]; *Gonzales, supra,* 34 Cal.App.5th at p. 1091 [same].)

In holding that hearing: "[T]he focus of the feasibility determination must be on whether a retrospective competency hearing will provide defendant a *fair opportunity* to prove incompetence, not merely whether some evidence exists by which the trier of fact might reach a decision on the subject. In making its feasibility determination, the court must consider the fairness of requiring defendant, who has already established a reversible . . . violation, to prove his incompetence to stand trial . . . with the . . . evidence of his prior mental condition still available to him today." (*Lightsey, supra,* 54 Cal.4th at p. 710) "Because of the inherent difficulties in attempting to look back to the defendant's past mental state [citation], the burden of persuasion will be on the People to convince the trial court by a preponderance of the evidence that a retrospective competency hearing is feasible in this case." (*Id.* at pp. 710-711)

We will therefore conditionally reverse and remand.

## II. Possessing Marijuana in Jail

Defendant contends his conviction for possessing marijuana in jail (§ 4573.6, subd. (a).) should be reversed in light of Proposition 64, which decriminalizes the possession of less than an ounce of marijuana. In support, he points us to this court's decision in *People v. Raybon* (2019) 36 Cal.App.5th 111, 113 (review granted August 21, 2019, S256978), which held the possession of less than an ounce of cannabis in prison is not a felony. The People, however, point us to *People v. Perry* (2019) 32 Cal.App.5th 885, 887, which held the opposite.

In gist, the *Raybon* and *Perry* courts part ways on the meaning of "pertaining to" in Health and Safety Code section 11362.45, subdivision (d), which states that Proposition 64 does not affect "Laws *pertaining to* smoking or ingesting cannabis" in jail. (italics added) Put simply, we agree with the reasoning in *Raybon* and will therefore reverse the conviction for possessing marijuana in jail.

## III. Senate Bill No. 136[9]

Defendant asks that we strike his six one-year prior prison term enhancements in light of SB 136. Effective January 1, 2020, SB 136 eliminates the section 667.5 one-year prior prison term enhancement for all prior convictions, except sexually violent offenses. (§ 667.5, subd. (b).) The People agree defendant is entitled to its ameliorative benefit.

We agree with the parties that because defendant's sentence is not yet final, and because none of his prior offenses were sexually violent offenses,[10] he is entitled to the ameliorative benefit of SB 136. (*People v. Gastelum* (2020) 45 Cal.App.5th 757, 761,

---

[9] Defendant originally contended he suffered five prior prison terms — not six — and thus one enhancement must be reversed. Because we strike all his prior prison term enhancements in light of SB 136, we need not reach that contention.

[10] The prior convictions were for reckless driving, possessing a firearm as a felon, unlawful sexual intercourse with a minor, evading an officer, vandalism, and assault by means likely to cause serious bodily injury.

772; *People v. Winn* (2020) 44 Cal.App.5th 859, 872-873; *People v. Lopez* (2019) 42 Cal.App.5th 337, 341.)

We will therefore strike the prior prison term enhancements.

## DISPOSITION

The judgment is modified to reverse the conviction for felony possession of marijuana in jail (Pen. Code, § 4573.6, subd. (a)). It is further modified to strike the six prior prison term enhancements (Pen. Code, § 667.5).

Additionally, the judgment as modified is conditionally reversed and remanded with directions to decide whether a retrospective competency hearing, to determine if defendant was competent to stand trial in October 2018, is feasible. (*Lightsey, supra,* 54 Cal.4th at p. 710.) The People bear the burden of convincing the trial court by a preponderance of the evidence that a retrospective competency hearing is feasible. (*Id.* at pp. 710-711.)

\* \* \* \* \*

If a retrospective competency hearing is not feasible, the case must be set for a new trial, after first determining defendant's present competence to stand trial. (*Lightsey, supra,* 54 Cal.4th at p. 732.) If a retrospective competency hearing is feasible, defendant has the burden of proving, by a preponderance of the evidence, that he was mentally incompetent to stand trial in October 2018. (§ 1369, subd. (f); *Ibid*.) If defendant is found to have been competent to stand trial in October 2018, the trial court shall reinstate the judgment as modified. If he is not, the case must be set for a new trial.


         /s/
        MURRAY, J.


We concur:


  /s/
RAYE, P. J.


  /s/
HULL, J.