Filed 8/6/24  P. v. Terhune CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CAMERON RICHARD TERHUNE,<br><br>Defendant and Appellant. | F086439<br><br>(Super. Ct. No. 1256002)<br><br>**OPINION** |

### THE COURT*

APPEAL from an order of the Superior Court of Stanislaus County.  Robert B. Westbrook, Judge.

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Detjen, Acting P. J., Smith, J. and Snauffer, J.

## INTRODUCTION

In 2010, appellant and defendant Cameron Richard Terhune (appellant) pleaded guilty to two counts of first degree premeditated murder of his parents and admitted two firearm enhancements. He was sentenced to an aggregate term of 100 years to life.

In 2023, appellant filed a petition for resentencing pursuant to Penal Code[1] section 1172.6 and several other statutes. The trial court denied the petition because he failed to comply with the procedural requirements of section 1172.6, subdivision (b).

On appeal, appellate counsel filed a brief which summarized the facts and procedural history with citations to the record, raised no issues, and asked this court to independently review the record pursuant to both *People v. Delgadillo* (2022) 14 Cal.5th 216 and *People v. Wende* (1979) 25 Cal.3d 436. Appellant submitted a letter brief and asserts he was entitled to resentencing and/or parole based on various statutory provisions. We review the court's ruling, address appellant's contentions, and affirm the denial of his petition.

## PROCEDURAL BACKGROUND

On January 20, 2009, a complaint was filed in the Superior Court of Stanislaus County charging appellant with counts I and II, first degree premeditated murders of Ken Terhune and Diane Terhune on January 13, 2009 (§ 187, subd. (a)), with an enhancement attached to each count that he personally and intentionally discharged a firearm proximately causing death or great bodily injury in the commission of the offenses (§ 12022.53, subd. (d)), and the multiple-murder special circumstance (§ 190.2, subd. (a)(3)).

On March 20, 2009, the prosecution indicated that it would not seek the death penalty.

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

2.

## **Plea Hearing and Sentencing**

On March 9, 2010, the trial court convened appellant's preliminary hearing, and stated that appellant was present with his attorney. The court admitted the prosecution's exhibits, a witness was sworn, and then the court took a recess for approximately one hour.[2]

After the recess, the trial court stated that appellant would be changing his not guilty plea as follows: he would plead guilty to counts I and II, first degree premeditated murder; admit the attached section 12022.53, subdivision (d) enhancements that he personally and intentionally discharged a firearm that proximately caused death or great bodily injury in the commission of the offenses; waive his appellate rights; the prosecution would move to strike the multiple-murder special circumstance to eliminate the possibility of appellant being sentenced to life without parole; and he would be sentenced to an indicated aggregate term of 100 years to life, based on four consecutive terms of 25 years to life for the convictions and enhancements. The prosecutor and defense counsel agreed with the court's recitation of the negotiated disposition, and appellant stated he was prepared to enter pleas subject to these terms.

The prosecutor and defense counsel stated they previously stipulated that the trial court could review a report from Dr. Philip Trompetter about his interview with appellant that was conducted two days after the murders. The court confirmed it reviewed Trompetter's report, it was also aware that defense counsel retained a mental health

---

[2]     As will be discussed below, this court advised the parties that we were considering whether to take judicial notice of the record before this court in *In re Terhune* (Feb. 29, 2016, F073212) (*Terhune*) [nonpub. order], including appellant's petition for writ of habeas corpus filed on February 17, 2016, and petition exhibit B, the reporter's transcript of the preliminary hearing/change-of-plea hearing held on March 9, 2010. The People did not object. Appellant partially objected. As will be explained, we overrule appellant's objection and rely on the reporter's transcript of the change-of-plea hearing to set out the procedural history of appellant's plea and sentence, in order to place in context the numerous issues raised in appellant's letter brief.

3.

professional to evaluate appellant's mental state, and the expert's opinion was that there was no basis for appellant to plead not guilty by reason of insanity. The court asked defense counsel if this was correct. Defense counsel said she had been working with a mental health expert for over one year, and "I am not prepared today to enter [a motion under sections] 1368, 1370, and nor am I prepared to advise [appellant] to enter [a] not guilty by reason of insanity [plea]."[3] The court asked defense counsel if she had any concerns about appellant's competency to enter a plea and counsel said no.

The trial court asked appellant if he understood that he was pleading guilty and appellant said yes. The court advised appellant of his constitutional rights and the nature and consequences of his pleas and admissions. Appellant stated he understood and waived his rights, and he had sufficient time to discuss the case with his attorney.

The prosecutor stated the following factual basis for appellant's pleas and admissions based on the sheriff's report, and evidence that would have been introduced at the preliminary hearing and trial.

> "[O]n or about January 13, 2009, in the early afternoon, [appellant] entered the residence of his parents, Ken and Diane Terhune. At the time[,] [appellant] lived in another building, a guest house, on the same property. He entered that property, went to his parents [*sic*] bedroom, armed himself with several guns, and then left the house back to his bedroom.

> "After test firing one of the guns and waiting for his parents to arrive home, [appellant] again entered the house, approached his brother, [E.T.], and contacted him. He demanded that [E.T.] leave the house. There was an argument that arose when that happened. [E.T.] saw the gun that his brother was holding. At that time[,] an argument ensued with [E.T.] attempting to convince [appellant] … not to do anything to his parents. [E.T.] was told by [appellant] that it was either the parents or all of them and told [him] again to leave the house, which [E.T.] did at that time.

---

**3**      Sections 1368 and 1370 address the court's ability to suspend criminal proceedings if a doubt arises about defendant's competency. (*People v. Gonzales* (2019) 34 Cal.App.5th 1081, 1086.)

"After [E.T.] left the house, [appellant] approached the kitchen through a doorway between the kitchen and dining room area of the house. He leaned into the kitchen area and shot, using one of the guns that he had with him, personally shot and intentionally discharged a firearm at his father hitting him in the back of his head. The shot went through Mr. Kenneth Terhune's head and into the cabinets behind him killing Mr. Terhune instantly.

"At that time[,] Mrs. Diane Terhune was coming through an entryway, a mud room in the house. [Appellant] saw her and she saw [appellant], she screamed and started to back away, tripped in the mud room and fell to the ground. At that time[, appellant] began to shoot her with the same gun that he had used to kill Mr. Terhune. He personally used that gun, personally discharged that gun at Diane Terhune. He shot her multiple times emptying that gun. He attempted to shoot her with another gun. When that gun misfired, he returned to Ken and Diane Terhune's bedroom, took another gun, and returned to the mud room and shot Diane Terhune at least two more times until that gun jammed. He then returned to the bedroom, obtained a flashlight, and returned to the scene where Ms. Terhune lay dying and hit her over the head multiple times with the flashlight until she became quiet.

"He did all these items with premeditation, deliberation as shown by the fact that he obtained the guns earlier in the afternoon, tested the guns, told his brother to leave. He's the only individual who fired a gun, he did that personally and intentionally discharging those firearms causing the death[s] of … Diane and Ken Terhune at the time he was committing murder."

Defense counsel agreed the proposed preliminary hearing evidence would support the prosecutor's stated factual basis for the plea.

Thereafter, appellant pleaded guilty to counts I and II, first degree premeditated murder, admitted the attached section 12022.53, subdivision (d) firearm enhancements, and waived his appellate rights. The trial court found appellant's pleas were knowing, intelligent, and voluntary, and granted the prosecutor's motion to dismiss the multiple-murder special circumstance.

On April 13, 2010, appellant was sentenced to the stipulated sentence of 100 years to life, based on consecutive terms of 25 years to life for count I, plus 25 years to life for

the attached firearm enhancement, and the same consecutive terms for count II and the attached enhancement.

**Writ Petitions**

In 2016, appellant filed a petition for a writ of habeas corpus with the superior court based on ineffective assistance at his plea hearing, and asserted his defense counsel failed to investigate his case and an insanity defense, failed to retain a mental health expert, appellant was not present when the preliminary hearing began, he was heavily sedated during the hearing, and he was forced to accept the plea agreement. The court denied the petition and found appellant's claims were refuted by the transcript of the March 9, 2010, preliminary hearing/change-of-plea hearing.

Thereafter, appellant filed a writ of habeas corpus with this court and reasserted the same issues. As supporting exhibits, appellant filed the reporter's transcript from the March 9, 2010 preliminary hearing/change-of-plea hearing, and the writ petition he filed in superior court. This court denied the petition without prejudice. (*Terhune*, *supra*, F073212.)

## APPELLANT'S PETITION FOR RESENTENCING

On May 11, 2023, appellant filed, in propria persona, a petition for resentencing pursuant to "all applicable sections of [the] Penal Code." Appellant's petition was based on section 1172.6 and numerous other statutes that purportedly made him eligible for resentencing and/or parole. With a few exceptions that are addressed below, appellant's petition cited to recent statutory amendments that are inapplicable to his convictions and indeterminate term. These include statutes about the imposition of determinate sentences and dismissal of prior serious felony convictions, prior prison term enhancements, gang enhancements, enhancements for prior drug-related convictions, and compassionate release.

**The Trial Court's Order**

On June 1, 2023, the trial court filed an order that summarily denied appellant's petition.

> "[Appellant] has filed a petition for resentencing under 'all applicable [s]ections of … section[s] 1170, 1171 and 1172, as well as [Assembly Bill No.] 1540 [(2021–2022 Reg. Sess.)].' A review of [appellant's] file reveals that he entered a guilty plea on March 15, 2010 to two counts of [first] degree murder [(§ 187)] and admitted the enhancements that he acted willfully, deliberately, and with premeditation. He also admitted two enhancements under [section] 12022.53. For his plea, he received a sentence of 100-years-to-life.
>
> "Of the menu of recall and resentencing options presented to the Court by [appellant], it appears that the only 'applicable' statute might be … section 1172.6[,] which permits a person convicted of murder under a theory of 'felony murder' or 'murder under the natural and probable consequences' doctrine to petition the court for resentencing. [Appellant] was not convicted of any priors pursuant to either … section 667.5 ([§] 1172.75) or Health and Safety Code section 11370.2 ([§] 1172.7).
>
> "A court may deny, without prejudice, a petition filed pursuant to … section 1172.6 that fails to state a prima facie case for relief. Here, the required declaration stating a prima facie case is absent.
>
> "The Court therefore DENIES the [p]etition without prejudice. [Appellant] may, if he thinks he qualifies, refile his [petition] with a declaration containing facts that meet the requirements of … section 1172.6."

On June 15, 2023, appellant filed a notice of appeal.[4]

## DISCUSSION

As explained above, appellate counsel filed a brief with this court pursuant to *Wende* and *Delgadillo*. The brief also included counsel's declaration that appellant was advised he could file his own brief with this court. This court advised appellant that he could file a supplemental letter brief. On June 3, 2023, appellant filed a letter brief and

---

[4] On October 25, 2023, this court sent a briefing order to the parties as to whether it had jurisdiction over this appeal. On March 1, 2024, this court filed an order to "allow the matter to proceed … as arguably appealable under section 1172.6 …."

relies on several statutes to assert that he should have been resentenced or received parole. We review the trial court's denial of his petition and appellant's arguments.

## I. Section 1172.6

Appellant's petition requested resentencing of his murder convictions pursuant to section 1172.6 and Senate Bill No. 775 (2020–2021 Reg. Sess.) (Senate Bill 775).

"In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill [1437]), which altered the substantive law of murder for accomplices in two respects. [Citation.] First, with certain exceptions, it narrowed the scope of the felony-murder rule so that a 'participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs' can be liable for murder only if '[t]he person was the actual killer'; '[t]he person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree'; or '[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life.' [Citation.] Second, it now requires that, except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder. [Citation.] In other words, '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' [Citation.] This aspect of Senate Bill [1437] eliminated liability for murder as an aider and abettor under the natural and probable consequences doctrine." (*People v. Arellano* (July 11, 2024, S277962) __ Cal.5th __ [2024 Cal.LEXIS 3469, pp. 10–11] (*Arellano*).)

Senate Bill 1437 also created "a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief" originally contained in former section 1170.95. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)

Effective January 1, 2022, Senate Bill 775 made substantive amendments to former section 1170.95 that were consistent with *Lewis,* and also " '[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of

felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.' " (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.) On June 30, 2022, former section 1170.95 was renumbered as section 1172.6 without further substantive changes. (*Arellano*, *supra*, __ Cal.5th __ [2024 Cal.LEXIS 3469, p. 11]; *People v. Saibu* (2022) 81 Cal.App.5th 709, 715, fn. 3.)

Section 1172.6, subdivision (a) thus states:

"(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a).)

As relevant to this case, section 1172.6, subdivision (b) states the procedural requirements to file the petition:

"(1) The petition shall be filed with the court that sentenced the petitioner and served by the petitioner on the district attorney, or on the

9.

agency that prosecuted the petitioner, and on the attorney who represented the petitioner in the trial court or on the public defender of the county where the petitioner was convicted. If the judge that originally sentenced the petitioner is not available to resentence the petitioner, the presiding judge shall designate another judge to rule on the petition. The petition shall include all of the following:

> "(A) *A declaration by the petitioner that the petitioner is eligible for relief under this section, based on all the requirements of subdivision (a)*.

> "(B) The superior court case number and year of the petitioner's conviction.

> "(C) Whether the petitioner requests the appointment of counsel.

> "(2) If any of the information required by this subdivision is missing from the petition and cannot be readily ascertained by the court, *the court may deny the petition without prejudice to the filing of another petition and advise the petitioner that the matter cannot be considered without the missing information*." (Italics added.)

" 'When the trial court receives a petition containing the necessary declaration and other required information, the court must evaluate the petition "to determine whether the petitioner has made a prima facie case for relief." [Citation.] If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citation.] If, instead, the defendant has made a prima facie showing of entitlement to relief, "the court shall issue an order to show cause." ' " (*Arellano*, *supra*, __ Cal.5th __ [2024 Cal.LEXIS 3469, p. 9].)

## II. Judicial Notice

We begin with appellant's partial objection to this court's determination whether to take judicial notice of the record before this court in *Terhune*, *supra*, F073212, including appellant's petition for writ of habeas corpus filed on February 17, 2016, and petition exhibit B, the reporter's transcript of the preliminary hearing/change-of-plea hearing held on March 9, 2010.

10.

Appellate counsel agreed this court may take judicial notice of our own records under Evidence Code section 452, subdivision (d), but the same statute prohibits this court from taking judicial notice of the truth of hearsay statements within those records. Counsel thus objected to this court taking judicial notice "to the extent that the court records contain[] 'factual' assertions [relevant] to [appellant's] case," particularly to "the prosecutor's statement of 'the factual basis' for the plea" as stated in the change-of-plea transcript. As a separate matter, appellate counsel requested this court provide for further briefing from the parties if we consider the significance of appellant's pleas and admissions at the change-of-plea hearing.

Appellate courts routinely take judicial notice of the records of their own cases under Evidence Code sections 452, subdivision (d) and 459. (See, e.g., *Rel v. Pacific Bell Mobile Services* (2019) 33 Cal.App.5th 882, 886 ["On our own motion, we take judicial notice of [two prior opinions in same case] as well as the underlying appellate records. (See Evid. Code, § 452, subd. (d).)"]; *People v. Bilbrey* (2018) 25 Cal.App.5th 764, 769, fn. 7 [taking judicial notice of related appeal in writ proceeding]; *People v. Vizcarra* (2015) 236 Cal.App.4th 422, 426, fn. 1 ["We take judicial notice of the record on appeal filed in this court in [prior appeal in same case], as well as of this court's unpublished opinion in that matter. (Evid. Code, §§ 451, subd. (a), 452, subd. (d), 459, subd. (a).)"].)

In determining whether a petitioner made a prima facie case for resentencing under section 1172.6, the court may review the record of conviction from the petitioner's case, which allows the court "to distinguish petitions with potential merit from those that are clearly meritless. This is consistent with the statute's overall purpose: to ensure that ... culpability is commensurate with a person's actions, while also ensuring that clearly meritless petitions can be efficiently addressed as part of a single-step prima facie review process." (*Lewis*, *supra*, 11 Cal.5th at pp. 971–972 & fn. 6.)

In reviewing the record of conviction, courts "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis*, *supra*, 11

11.

Cal.5th at p. 972.) When the record of conviction unequivocally establishes the petitioner was the actual killer, the petitioner is not entitled to relief under section 1172.6 as a matter of law. (*People v. Delgadillo*, *supra*, 14 Cal.5th at p. 233; *People v. Garcia* (2022) 82 Cal.App.5th 956, 969–971.) The record of conviction includes the information, the transcripts for the change of plea and sentencing hearing, and the abstract of judgment. (*People v. Fisher* (2023) 95 Cal.App.5th 1022, 1028–1029; *People v. Pickett* (2023) 93 Cal.App.5th 982, 988, rev. granted Oct. 11, 2023, S281643); *People v. Sohal* (1997) 53 Cal.App.4th 911, 915.)

### *Analysis*

In taking judicial notice of this court's records in appellant's prior writ petition, we are relying on the transcript of the change-of-plea hearing to provide context and address both the trial court's denial of appellant's petition for resentencing, and the numerous other issues raised in appellant's letter brief. In doing so, we are not making any factual findings since the trial court never reached the prima facie issue.[5] We thus overrule appellant's objections, decline to order further briefing, and take judicial notice of our own records from appellant's prior writ petition, including the change-of-plea transcript. (Evid. Code, §§ 450, 452, subd. (d), 459.)

### III.  The Court's Denial of Appellant's Petition For Resentencing

The trial court correctly found that appellant's petition for resentencing did not include the declaration required by section 1172.6, subdivision (b)(1)(A), that he was convicted pursuant to felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime. "[N]oncomplying petitions may be

---

[5]     We note that statements and stipulations made at a plea hearing, and the plea colloquy, have been considered part of the record of conviction. (*People v. Fisher*, *supra*, 95 Cal.App.5th at pp. 1028–1029; *People v. Romero* (2022) 80 Cal.App.5th 145, 152–153; *People v. Roberts* (2011) 195 Cal.App.4th 1106, 1120.)

quickly screened out under subdivision (b)(2) of section [1172.6]. Further, the requirement that a petition include '[a] declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a)' [citation] should discourage frivolous petitions." (*Lewis*, *supra*, 11 Cal.5th at p. 968.) Appellant's petition was facially insufficient and the trial court properly filed a summary denial.[6]

## IV.  Section 1172.1

In both his petition and his letter brief on appeal, appellant separately relied on section 1172.1 to argue the trial court should have recalled his sentence of 100 years to life and resentenced him. On appeal, appellant again argues the court had "broad new authority" under section 1172.1 to recall his sentence based on his "record of rehabilitation." Appellant asserts that in his "resentencing journey," he received an "endorsement" from an unnamed corrections employee that he should be resentenced under section 1172.1. Appellant stated he had to raise the issue in this petition because there is "no mechanism" to start a referral for recall, and the district attorney and another unnamed corrections official refused to do so.

Section 1172.1 "allows a trial court to resentence a defendant at any time on the recommendation of, among others, the [Secretary of the] Department of Corrections and

---

[6]     When appellant filed his petition for resentencing in propria persona, he attached numerous documents as supporting exhibits that showed his good conduct and positive performance in prison. He also attached a lengthy handwritten letter addressed to his late parents, where he admitted that he shot and killed his parents, apologized, addressed what was going on with his life, and explained how he had changed.

As previously explained, we are not relying on the change-of-plea transcript to make any factual findings and the trial court never reached the prima facie issue. Appellant's petition, however, was inherently contradictory because he filed a supporting document where he admitted being the actual killer of both victims, which would have rendered him ineligible for resentencing as a matter of law. (*People v. Garcia*, *supra*, 82 Cal.App.5th at p. 973.)

13.

Rehabilitation [CDCR], the Board [of Parole], or the district attorney." (*People v. Ngo* (2023) 89 Cal.App.5th 116, 128.) CDCR's "recommendation furnishes the court with jurisdiction it would not otherwise have to recall and resentence and is 'an invitation to the court to exercise its equitable jurisdiction.' " (*People v. McMurray* (2022) 76 Cal.App.5th 1035, 1040.) "Although section 1172.1 does not prescribe any particular form for a recommendation for recall and resentencing, [the CDCR] typically makes such a recommendation expressly in a letter from the secretary." (*People v. Codinha* (2023) 92 Cal.App.5th 976, 987.)

When the trial court receives a section 1172.1 letter from the CDCR, it has "broad discretion whether to recall the existing sentence and resentence the incarcerated individual. '[T]he Secretary's recommendation letter is but an invitation to the court to exercise its equitable jurisdiction,' which 'furnishes the court with the jurisdiction it would not otherwise possess to recall and resentence.' " (*People v. Cepeda* (2021) 70 Cal.App.5th 456, 469.)

In this case, there is no evidence the Secretary of the CDCR recommended recall and resentencing of appellant under section 1172.1, and the trial court did not have "broad discretion" or jurisdiction to do so. As a result, the judgment in this case remained final and appellant was ineligible for resentencing. (See, e.g., *People v. Magana* (2021) 63 Cal.App.5th 1120, 1126–1127.)

## V. Senate Bill No. 620 and Section 12022.53

In his petition, appellant cited Senate Bill No. 620 (2017–2018 Reg. Sess.) (Senate Bill 620) as another separate basis for resentencing. In his letter brief on appeal, appellant argues the trial court should have considered whether to dismiss his two firearm enhancements because of Senate Bill 620's amendments to section 12022.53, because the court did not have "the opportunity to exercise its discretion" when it originally sentenced him, and it would be appropriate to dismiss the enhancements in his case.

"Effective January 1, 2018, Senate Bill [620] gave trial courts previously unavailable discretion to strike or dismiss firearm enhancements otherwise required to be imposed by … sections 12022.5 and 12022.53. [Citations.] There is no dispute that these statutory amendments apply retroactively to cases *in which the judgment was not yet final when Senate Bill [620] went into effect*." (*People v. Baltazar* (2020) 57 Cal.App.5th 334, 337, italics added.)

As a result of the amendments, section 12022.53, subdivision (h) now states: "The court may, in the interest of justice pursuant to [s]ection 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section. The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law." "[T]he authority to strike or dismiss a firearm enhancement applies only to nonfinal judgments or to final judgments where the defendant is being resentenced under some other law. [Citation.] ' "[I]f the Legislature wanted to provide a specific procedure via petition or motion to reopen final cases for resentencing, it could have done so. [Citations.] It did not." [Citations.]' " (*People v. Baltazar*, *supra*, 57 Cal.App.5th at p. 341.)

Appellant's sentence has not been recalled, he was not resentenced, the judgment remains final, and the trial court did not have jurisdiction to dismiss the firearm enhancements.

## VI. Consecutive Terms for the Firearm Enhancements.

Appellant further asserts in his letter brief that he is eligible for resentencing because when he was originally sentenced, the trial court erroneously imposed two consecutive terms of 25 years to life for the firearm enhancements attached to counts I and II pursuant to section 12022.53, subdivision (d). Appellant argues the consecutive terms violated section 12022.53 because the statute states the enhancement shall not be imposed "more than once per crime." Appellant complains that throughout his case, the prosecution improperly asserted he committed a " 'heinous double

15.

murder,' " and it was inappropriate to treat the murders as "distinct, separate crimes in order to permit levying additional gun enhancements." Appellant asserts the matter must be remanded for resentencing because he received "an illegal or unauthorized sentence."

Appellant did not raise this issue in his petition and this contention is not cognizable in this appeal. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 919.) Moreover, appellant cannot raise issues arising from his plea, conviction, and sentence in a section 1172.6 petition. (*People v. Farfan* (2021) 71 Cal.App.5th 942, 947; *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438.)

We further note that even if cognizable, appellant's claim is meritless. Appellant pleaded guilty to two separate counts of first degree premeditated murder, and admitted the allegations attached to each count pursuant to section 12022.53, subdivision (d), which states: "Notwithstanding any other law, a person who, in the commission of a felony specified in subdivision (a), [s]ection 246, or subdivision (c) or (d) of [s]ection 26100, personally and intentionally discharges a firearm and proximately causes great bodily injury, as defined in [s]ection 12022.7, or death, to a person other than an accomplice, shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life." The felonies "specified in subdivision (a)" include murder. (§ 12022.53, subds. (a)(1), (d).)

Subdivision (f) of section 12022.53 states: "Only one additional term of imprisonment under this section shall be imposed per person *for each crime*." (Italics added.) "[T]he Legislature, in limiting the number of enhancements that are to be imposed, could have, but did not, limit imposition to one enhancement per discharge of a firearm or per infliction of great bodily injury or death. Rather, the only limitation is that only one enhancement may be imposed per *crime* (i.e., qualifying felony)." (*People v. Mason* (2002) 96 Cal.App.4th 1, 11–12.)

Appellant pleaded guilty to counts I and II as alleged in the complaint, that he committed the first degree premeditated murder of two people, and admitted the attached

16.

enhancements. The trial court properly imposed a separate firearm enhancement for each conviction of first degree premeditated murder.

## VII. Additional Trial and Sentencing Claims

Also in his letter brief on appeal, appellant raises various issues relating to his plea, conviction, and sentence that he did not raise in his petition for resentencing. He cites to a report prepared by an expert for the prosecution, where the expert concluded appellant was not psychotic or delusional, and he was competent to stand trial. Appellant asserts that "almost immediately afterward," a jail psychiatrist prescribed "an avalanche of powerful psychotropic drugs," and he was "continuously pumped full" of these drugs "until I pled guilty and was sentenced." Appellant declares he was "rendered incompetent" when he entered his guilty pleas to the murder charges.

Appellant further asserts that when the trial court originally sentenced him, it failed to consider certain mitigating factors such as his youth, and alleged sexual abuse and mental health problems. Appellant also argues the court improperly imposed the restitution fine without finding he had the ability to pay and the order must be stricken, presumably based on *People v. Dueñas* (2019) 30 Cal.App.5th 1157.

Appellant did not raise any of these issues in his petition, and they are not cognizable in this appeal. (*People v. Covarrubias*, *supra*, 1 Cal.5th at p. 919.) As previously explained, appellant's judgment is final and he cannot use a section 1172.6 petition to raise issues arising out of his plea, conviction, and sentence. (*People v. Farfan*, *supra*, 71 Cal.App.5th at p. 947; *People v. DeHuff*, *supra*, 63 Cal.App.5th at p. 438.)

As for his restitution claims, we note the record in this appeal shows that on December 18, 2023, while this appeal was pending, appellant filed yet another petition in the superior court, seeking reduction of the restitution fine and fees imposed at his sentencing hearing because he was an indigent prisoner. On December 27, 2023, the trial court summarily denied the restitution petition because appellant was sentenced in 2010,

the judgment was final, and the court did not have jurisdiction to vacate or modify the sentence. Appellant did not file an appeal from the court's order. In any event, as with his other sentencing claims, the judgment is final and he is not entitled to retroactive application of *Dueñas*.

## DISPOSITION

We take judicial notice of the record before this court in *Terhune*, *supra*, F073212, including appellant's petition for writ of habeas corpus filed on February 17, 2016, and petition exhibit B, the reporter's transcript of the preliminary hearing/change-of-plea hearing held on March 9, 2010.

The trial court's order of June 1, 2023, is affirmed.